**UNITED STATES ex rel. THOMPSON v. NIERSTHEIMER, Warden.**

**No. 9483.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 19, 1948.

Lloyd Middleton, of East St. Louis, for appellant.

George F. Barrett, Atty. Gen., and Edward Wolfe, Asst. Atty. Gen., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The petitioner on July 6, 1931, was convicted of first degree murder in the Criminal Court of Cook County, Illinois, and sentenced to serve one hundred years in the penitentiary. In his petition for habeas corpus he alleges that the respondent restrains him, pursuant to a judgment of the Cook

County Criminal Court based upon this conviction, in violation of the due process clause of the Fourteenth Amendment. The denial of due process, the petitioner contends, resulted from the expeditiousness of his trial, the denial of counsel of his choice, and also from the perfunctory defense offered by counsel appointed by the court which rendered the trial a mere form.

The cause was heard before the District Court. The court appointed counsel to represent the petitioner, and counsel has most diligently and ably prosecuted the petition and this appeal. The court found against the petitioner and denied his petition. From this judgment of denial, the petitioner has appealed.

The petitioner's first contention is that he was indicted, counsel was appointed to defend him, he was arraigned, tried, and convicted in a capital case all in one day, and that such expeditiousness denied him due process in that his counsel made no independent investigation, subpoenaed no witnesses, and asked for no continuance, as requested by the petitioner.

■■ In a capital case the court should not move so rapidly as to ignore or violate the rights of the defendant to a fair trial. No standard length of time must elapse before a defendant in a capital case should go to trial. Each case, and the facts and circumstances surrounding it, provides its own yardstick. There must not be a mere sham proceeding or idle ceremony of going through the motions of a trial. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Moore et al. v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. However, courts do not deny due process just because they act expeditiously. The law's delay is the lament of society. Counsel must not conjure up defenses when there are none. Continuances to investigate and the subpoenaing of witnesses are matters that counsel must consider. If no witnesses are suggested or information furnished that would possibly lead to some material evidence or witnesses, the mere failure to delay in order to investigate would not be,

in and of itself, a denial of due process. Whether delay and investigation are advisable is for counsel to weigh and consider. In an "open and shut" capital case, the avoidance of the death penalty may be the only hope of defense counsel. That was this case. To hear the petitioner now, seventeen years after his conviction for first degree murder, all that he wants is counsel of his choice, an opportunity to investigate and subpoena phantom witnesses, and a trial of greater duration.

■ Here are the facts as they appeared in the hearing in the instant case in the District Court. On June 30, 1931, the petitioner, who had been drinking, shot and killed a police officer. Five eye-witnesses to the shooting, all of whom unhesitatingly identified the petitioner, testified for the State at the trial. The petitioner denies the following facts testified to by Judge Finnegan, who tried him; Mr. Coghlan, the Assistant State's Attorney, who prosecuted him; Mr. Crowley, an experienced, able criminal lawyer, now a judge in Chicago, who as Assistant Public Defender was counsel for him; Lieutenant Curtin of the Chicago Police Department, who arrested him for the fatal shooting; and Mr. Healy, the court reporter, who reported all that was said and done in the courtroom from the time the petitioner stood before the bar before arraignment until his sentence.

While in custody and before indictment, the petitioner told Mr. Coghlan that he had no money to employ counsel and requested Mr. Coghlan to send him the Public Defender. Mr. Coghlan contacted Mr. Bachrach, the Public Defender, who sent his assistant, Mr. Crowley, to see the petitioner. He saw the petitioner on July 2 and 3, at which times he had lengthy interviews with him, after Mr. Crowley had examined the file of the State's Attorney and received the suggestion from the Assistant State's Attorney that he would not insist on the death penalty if the case was disposed of promptly. The petitioner seemed anxious to "get it over with" and avoid the death penalty.[1] He was satisfied with

---

[1] After the petitioner had been found guilty and before he was sentenced, the following colloquy took place:

"The Court: Coy, have you anything to say before sentence is passed upon you?
\* \* \* \* \* \* \*

Mr. Crowley and requested him to represent him. Mr. Crowley denies that the petitioner ever requested him to obtain a continuance to make an investigation or to subpoena any witnesses, or that the petitioner ever gave him the name of any witnesses to be subpoenaed. Mr. Crowley testified that the petitioner's only explanation of the shooting was that he had been drinking and did not remember what happened.

It seemed a foregone conclusion that the petitioner would be indicted for murder. On July 6, 1931, he was indicted, and Mr. Crowley accompanied him into court. From the record of the court reporter, the following proceedings took place:

"The Court: Who represents you, Mr. Crowley?

"The Defendant: Yes sir.

"Mr. Coghlan: Does the record show the Public Defender is appointed?

"The Court: If not, appoint the Public Defender to represent Mr. Thompson.

"You are charged here with Murder, Mr. Thompson. Do you plead guilty or not guilty?

"Mr. Crowley: Not guilty.

"The Court: Do you want a court trial or jury trial?

"The Defendant: Court trial.

"The Court: You understand under the law it is your privilege to have a jury trial. If you want to waive that privilege, sign the jury waiver. (Jury waiver signed.)

"The Court: You have consulted with Mr. Crowley, have you, and he has advised you of your rights?

"The Defendant: Yes.

"The Court: He has advised you of the plea of not guilty and jury waiver has he?

"The Defendant: Yes.

"The Court: Also told you that you are entitled to a jury trial?

"The Defendant: Yes.

"The Court: You understand by signing this document you are waiving the privilege of a jury trial?

"The Defendant: Yes.

"The Court: You understand under the law if there is a finding by the Court it is the same as if the jury made a finding. You understand that?

"The Defendant: Yes.

"The Court: You understand under the law the Court, now that you have waived the jury, has the same right and province and it is his duty to fix punishment if there is a finding of guilty?

"The Defendant: Yes.

"The Court: You understand on the finding of guilty, if there is one, the Court has the power to sentence you to death, life imprisonment, or for any number of years not less than fourteen? You understand that?

"The Defendant: Yes.

"The Court: And knowing all of that you still want to waive the jury and are ready for trial?

"The Defendant: Yes."

The petitioner denies that record and denounces it as a fraud, although it is supported by the testimony of Judge Finnegan, Mr. Coghlan, Mr. Crowley, Lieutenant Curtin, and Mr. Healy.

The petitioner also comes forward now with a claim not asserted at the trial, namely, that he was hit on the head in an assault by four men, and he did not remember anything from then until after his arrest.

From the record quoted above, it appears that the court officially appointed Mr. Crowley to defend the petitioner when he was first presented in court. From the testimony of the witnesses and from the record, it is clear that the petitioner had been consulting on two different days with Mr. Crowley, the very attorney who appeared with him when he first stood before the bar, and with whom he was satisfied. The court then made the appointment of the Public Defender a matter of record, and Mr. Crowley as Assistant Public Defender continued to represent the petitioner in the trial, which followed immediately. While this is evidence of speedy justice, it refutes

"The Defendant: I know, Sir, that I am wrong and have done wrong, and I am sorry for it, and if there is any possible chance in years to come, if Your Honor sees fit to leave me live, if there is ever any chance to go back in the free world, I will certainly have learned my lesson and there will be no more drinks."

the contention that the trial was a sham and no justice.

These are the circumstances of this desperate case. An indictment, never in doubt, was speedily returned. The petitioner had been in consultation on two separate days before indictment with able counsel with whom he was satisfied, who accompanied him to court, who was officially appointed by the court before arraignment to represent him, and who entered a plea of not guilty for him and required the State to prove its case, which was speedily and readily done. The petitioner had no defense or claimed any. In view of these circumstances, we agree with the District Court that the trial was not a sham or a pretense, but met the requirements of due process, and we cannot condemn it because it was expeditious.

■ As to the petitioner's contention that he did not have counsel of his own choice, on all the evidence, record and otherwise, it is clear that the petitioner asked for and received the services of the Assistant Public Defender, an able lawyer, consulted with him, was satisfied with him, and relied upon him before and after he was appointed by the court. Mr. Crowley was, under such circumstances, counsel of the petitioner's own choice, as the District Court found.

The petitioner alleges that the common law record shows that he did not have counsel of his choice, but that the court of its own motion appointed the Public Defender as his counsel, and that evidence which tends to show that he sought, received, and accepted the services of the Public Defender cannot be received and considered as it constitutes a challenge to the verity of the court's record. Granting for the sake of argument that the court's record speaks absolute verity and is not open to challenge, in the absence of a showing of fraud, Christakos v. Hunter, Warden, 10 Cir., 161 F.2d 692, 694, we do not think that the evidence received and considered here challenges the verity of the record. The record recites: "And it appearing to the Court that the said Defendant is not represented by Counsel the Court of its own motion doth appoint Attorney Benjamin Bachrach, Public Defender, Counsel for said Defendant in the trial of this cause."

As we have pointed out, Mr. Crowley was an assistant in Mr. Bachrach's office. The second question addressed to the petitioner by Judge Finnegan was:

"Who represents you, Mr. Crowley?

"The Defendant: Yes sir."

Then the Assistant State's Attorney asked:

"Does the record show the Public Defender is appointed?"

"The Court: If not, appoint the Public Defender to represent Mr. Thompson."

The order showed that the person holding the office of the Public Defender was officially appointed to represent the petitioner at the trial. The fact that Mr. Crowley had been consulting with and advising the petitioner before his indictment and arraignment and of course was known by Judge Finnegan to be from the Public Defender's office, does not contradict the record. It merely explains it and shows what the office of the Public Defender, officially appointed, had done theretofore to enable him to properly represent the petitioner. All of this evidence was competent to show whether the petitioner had counsel of his choice, which was in this instance the Assistant Public Defender.

■ On all of the issues tendered by the petitioner, the District Court found against the petitioner. The evidence clearly supports the District Court's findings, and they will not be disturbed here. Maye v. Pescor, Warden, 8 Cir., 162 F.2d 641, 644; Wood v. Howard, 7 Cir., 157 F.2d 807; Botwinski v. Dowd, Warden, 7 Cir., 118 F.2d 829, 830.

The judgment of the District Court is affirmed.