THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD DANDRIDGE, Defendant-Appellant.

(No. 59205;

First District (1st Division)—April 15, 1974.

*Modified on denial of rehearing July 1, 1974.*

746

James J. Doherty, Public Defender, of Chicago (John Bogren, Steven Silets, and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Barry Rand Elden, and Jerome C. Randolph, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

On April 15, 1974, acting upon the briefs of the parties and on oral argument, this court filed an opinion. In due course a petition for rehearing was filed in behalf of defendant. With leave of court this petition was supplemented by filing additional material. This court then requested that an answer to the petition for rehearing be filed by the State. (Supreme Court Rule 367(d), 50 Ill.2d R. 367(d).) An answer to the petition was then filed. A reply to the State's answer was filed by counsel for defendant. After careful study of all of these additional matters, we have decided to and we do file the following opinion in lieu of the one originally filed herein.

Donald Dandridge (defendant) pleaded guilty to burglary. (Ill. Rev. Stat. 1971, ch. 38, par. 19—1.) On January 25, 1971, he was sentenced to 5 years' probation, the first 6 months to be served in the county jail. On September 6, 1972, the State filed a petition for a rule to show cause why probation should not be revoked alleging that defendant had been indicted for unlawful use of a weapon. The additional charge that defendant had violated his probation by failing to report to his probation officer was added later. On October 2, 1972, defendant's probation was

revoked and he was sentenced to 3 to 9 years in the penitentiary. He appeals.

At the commencement of the revocation hearing, defendant requested a continuance because he had spoken to a private attorney and wanted to hire him. After passing the case, the judge proceeded with a hearing on the revocation of probation, but not to trial on the substantive offense concerning use of weapons.

At the hearing, an officer of the probation department testified that defendant was admitted to probation on January 25, 1971, and was instructed that he was to report once a month after his release from jail. He further stated that defendant never reported and that a "home visit" was attempted on July 12, 1971, but that defendant could not be found. An objection to this testimony by defense counsel was overruled.

Concerning commission of the substantive offense, two police officers testified that they saw defendant grab his leg as he was alighting from his car and they noticed a gun fall from his pant leg and onto the street near the driver's side of the car. Defendant kicked the gun partially under the car. They placed defendant under arrest and took him to the police car where he told them his name was Joseph Eastline. The officers then recovered the gun, a loaded .22 derringer. Both officers testified that there was at least one other person in the car.

Defendant testified that he had reported to a probation officer named Albert Chesser for his first interview, but was not told to report every month. He testified that he had reported to Mr. Chesser on approximately three subsequent occasions, but did not have him sign his card because it was in his wallet at home. On cross-examination, however, he admitted signing the statement on his probation card that he had "read the foregoing" and fully understood "the rules and regulations" of probation. A member of the probation department had previously testified that this card advised the probationer of the rules of probation, including the days when he was required to report. The defendant stated that he had signed a lot of things at the initial interview and didn't really know what they were.

As to the weapon charge, defendant testified that he had come out of "a lounge" and picked up two friends. When he noticed that they were carrying some "contraband", which he guessed was heroin, he pulled over to the curb. The police officers then approached and took him to the police car. He testified that they called him "Joseph Eastline," although he denied that was his name and told them his correct identity and showed them his driver's license. One of his passengers ran from the scene and the other was taken into custody. He also testified that one of the officers went back to the car and returned with a gun which he stated

he had found on "the passenger's side of the car, right up under the clutch." Defendant also testified that he had never seen the gun before.

Mr. Albert Chesser, apparently never sworn to testify, appeared and stated in open court that he only handled drug program petitions, and was not a regular probation officer. He remembered defendant vaguely and he may have handled his petition and the arrangements for him to enter the Illinois drug abuse program, but he was not the regular probation officer to whom defendant was to report monthly.

. Defendant urges here that the trial court abused its discretion in refusing his request for a continuance so that he could employ private counsel; the State failed to introduce any competent evidence that defendant was in violation of a condition of his probation; the trial judge abused his discretion in finding by a preponderance of the evidence that the defendant did commit the crime of unlawful use of weapons; and, finally, the time defendant spent on probation should be credited against his sentence.

We find no merit in defendant's first contention that the court abused its discretion in denying him a continuance. Defendant himself asked the court to grant him a continuance because he had talked to and would have liked to hire a private attorney. The judge passed the case to consider the proper action to be taken. When the proceedings reconvened, the following colloquy took place:

> "The Court: We are not proceeding on the case. We are proceeding on the violation of probation. It has been brought to my attention you did answer ready when the officer was here. You want to hire an attorney for the other case, is that correct, Mr. Kunkle? You are ready?
>
> Mr. Kunkle: In a legal sense, naturally if my client doesn't want to proceed, I'd ask for the continuance that he is asking for.
>
> The Court: Ready? The officer here? At this time we are going to go to trial as far as the hearing on the revocation of probation and not on the trial over your objection."

At this point, defendant's attorney made an argument only on an unrelated point. He did not renew the request for a continuance based on the desire of defendant to hire private counsel for the revocation hearing. Thus, it appears that defendant's request was satisfied by not going to trial on the substantive offense.

■■ Even if this were not true, the trial judge did not abuse his discretion. (See Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) Our supreme court has stated in *People v. Solomon*, 24 Ill.2d 586, 182 N.E.2d 736:

> "The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the

particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. (*People v. Surgeon,* 15 Ill.2d 236; *People v. Clark,* 9 Ill.2d 46.) Before a judgment of conviction will be reversed because of the denial of such a motion, it must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. (*People v. Van Norman,* 364 Ill. 28; see also: *Holt v. United States,* (8th cir.) 267 F.2d 497; *United States ex rel. Thompson v. Nierstheimer,* (7th cir.) 166 F.2d 87; *Crono v. United States,* (9th cir.) 59 F.2d 339.)" 24 Ill.2d at 589-590.

The facts and circumstances here indicate no embarrassment and no prejudice to defendant. He expressed no dissatisfaction with his public defender, but merely indicated he had been told he "should have a lawyer." His public defender was obviously well prepared and quite competent and defendant did cooperate with him. Thus, there was no prejudice to defendant. (*People v. Canaday,* 49 Ill.2d 416, 426, 427, 275 N.E.2d 356.) No appearance was ever filed by any private attorney. The record shows merely a statement that defendant had talked with one and that he would like to hire him. *People v. Tyson,* 130 Ill.App.2d 140, 143, 144, 264 N.E.2d 403.

■■ Defendant relies primarily upon *People v. Ritchie,* 66 Ill.App.2d 417, 213 N.E.2d 306. That case, however, is different in a number of respects from the one before us. There, the defendant asked for a continuance because he and his family had expressed dissatisfaction with the public defender and a private attorney had twice contacted the public defender asking him to obtain a continuance. Further, after the continuance was refused, the public defender moved to vacate his appointment as counsel for defendant and after denial of the motion stated that he did not plan to try the case. The judge told the public defender to stay in the courtroom, which he did. The defendant stated that he did not want the public defender's help and received little assistance. On the contrary, in the case before us, the public defender effectively represented defendant, apparently to his satisfaction. We find no abuse of discretion in this record.

Defendant's second contention is that the State failed to prove a violation of probation since the testimony offered on this point was incompetent. Defendant is correct in his assertion that the testimony of the probation officer was hearsay. (Cleary, Handbook of Illinois Evidence, § 17.1 (2d ed. 1963). See also *People v. Carpenter,* 28 Ill.2d 116, 120, 121, 190 N.E.2d 738.) However, as the State points out, defendant's own testimony was more than sufficient to show such violation. Defen-

dant stated that he had reported "About three" times to a probation officer named Albert Chesser, but admitted that Chesser had never signed his card. Since defendant was placed on probation in May and not arrested until the following February, he has himself admitted a violation of the monthly reporting requirement. Furthermore, Albert Chesser stated that he was not defendant's regular probation officer, but would only have dealt with him in regard to the drug abuse program. Thus, although the State's evidence was not competent, defendant's own admission waives any deficiencies in the State's case. *People v. Collins,* 14 Ill.App.3d 446, 448, 302 N.E.2d 709, and other authorities therein cited.

Defendant next contends that the trial judge abused his discretion in finding that the defendant's testimony was less credible than that of the two police officers as to the charge of unlawful use of weapons. The State was legally required to show the violation only by a preponderance of the evidence and did so sufficiently. In this type of situation, the trier of fact is to weigh the credibility of witnesses and resolve conflicts in the testimony. (*People v. Crowell,* 53 Ill.2d 447, 451, 452, 292 N.E.2d 721.) At the outset of the hearing, the trial judge stated that he would go beyond the legally required "preponderance of the evidence" standard. He said, "I would not violate a man's probation unless I found [him guilty] beyond a reasonable doubt   *   *   *   upon the charge   *   *   *." This record presents no arguable question as to the sufficiency of the evidence. Defendant's probation was properly revoked for violation of a penal statute and for failure to report as required. Ill. Rev. Stat. 1971, ch. 38, pars. 117—2(a)(1) and (3).

■■ Finally, defendant contends that he is entitled to credit against the newly imposed sentence for the "Time served on probation   *   *   *." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(h).) The State contends that defendant is not entitled to credit because of his failure to comply with the conditions of his probation. This section of the Unified Criminal Code was amended by addition of the words "unless the court orders otherwise." (Public Act 78-939. See Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(h).) If this amendment were applicable to the cause before us, the State's argument would have considerable potency. However, as the State concedes, with commendable candor, this amendment is not applicable to the instant case. (*People ex rel. Weaver v. Longo,* 57 Ill.2d 67, 309 N.E.2d 581.) See also *People v. Wheatley,* 17 Ill.App.3d 657, 660, 308 N.E.2d 129, 131, pointing out that Public Law 78-939 which was certified on November 14, 1973, and which may be effective July 1, 1974, is not retroactive.

But, the State presses its contention and urges that even absent the amendment no credit should be allowed in the case before us. They

present the analogy that a defendant who violates his sentence of probation, particularly by failure to report to the authorities, should be treated the same as an incarcerated prisoner who escapes during his term and then claims credit for the time spent at large. It may well be argued that the amendment shows legislative policy to permit denial of credit in proper cases (*People v. Scott*, 57 Ill.2d 353, 312 N.E.2d 596), but it is not legally applicable to the case before us. It may also be urged, as defendant does, that the very passage of the amendment indicates that the legislature wished to remedy the previously existing lack of discretion vested in the court to deny credit for probation.

Considering the matter aside from the statutory amendment, it has been repeatedly held that credit should be granted pursuant to the statute and in none of these cases, to our knowledge, has the issue of complete refusal of credit for failure to report been raised or decided. *People v. Schreiber*, 18 Ill.App.3d 410, 304 N.E.2d 686; *People v. Johnson*, 13 Ill.App.3d 1020, 1026, 304 N.E.2d 681; and *People v. Murray*, 13 Ill.App.3d 987, 301 N.E.2d 612.

■■ It is our considered opinion that the State's contention must be rejected and credit granted. Aside from the amendment, not applicable here, the statute creates no exception, grants no discretion and imposes no condition upon the allowance of credit for "time served on probation." We cannot read a grant of judicial discretion into a statute where none exists. The point at issue here may be *de minimis* in its scope and application because the occurrence of the effective date of the amendment to the Code, perhaps on November 14, 1973, but no later than July 1, 1974, will operate to vest discretion in trial courts to determine and modify the amount of credit.

It should also be noted that the issuance of an arrest warrant operates to toll the running of a probation period. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(a). See also *People v. Burton*, 14 Ill.App.3d 1096, 303 N.E.2d 16; *People v. Newton*, 18 Ill.App.3d 180, 185, 309 N.E.2d 779.) The trial court should accordingly make a determination in the case before us as to the exact extent of the credit to be allowed defendant and the *mittimus* should be amended accordingly.

■■ The judgment for revocation of probation and sentence is affirmed and the cause is remanded to the trial court with directions to consider and determine the amount of credit to which defendant is entitled for time served in jail and on probation consistent with the views above expressed.

Judgment affirmed, cause remanded.

BURKE and HALLETT, JJ., concur.