(No. 46255.-

THE PEOPLE *ex rel.* JAMES WEAVER, Relator, v. JOSEPH J. LONGO *et al.,* Respondents.

*Opinion filed March 29, 1974.*

Howard M. Rubin, of Chicago (Peter Berman (Senior Law Student), of counsel), appointed by the court, for relator.

William J. Scott, Attorney General, of Springfield (James B. Zagel and Robert E. Davy, Assistant Attorneys General, of counsel), for respondents.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The relator, James Weaver, was convicted of attempted armed robbery and had served 5 years of a 13-to-14-year sentence of imprisonment. He sought and was granted leave to file this original *mandamus* action seeking issuance of the writ to compel respondents, the chairman and members of the Parole and Pardon Board of the State of Illinois, to apply to his case the provisions of the recently enacted Unified Code of Corrections which, if applicable, would make him eligible for parole consideration.

On October 1, 1973, relator made a demand upon respondents to consider him for parole and that demand was refused. He now contends that the new Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1001—1—1 *et seq.*) provides that an individual sentenced to the Department of Corrections prior to January 1, 1973, the effective date of the new Code, is eligible for parole on the basis of the sentence he would have received thereunder.

Relator relies particularly upon section 3—3—3 of the Code, which provides:

"(a) Every person serving a term of imprisonment under Section 5—8—1 shall be eligible for parole when he has served:

(1) the minimum term of an indeterminate sentence less time credit for good behavior, or 20 years less time credit for good behavior, whichever is less; or

(2) 20 years of a life sentence less time credit for good behavior; or

(3) 20 years or one-third of a determinate sentence, whichever is less, less time credit for good behavior.

(b) Every person committed to the Juvenile Division under Section 5—10 of the Juvenile Court Act or Section 5—8—6 of this Code and confined in the State correctional institutions or facilities shall be eligible for parole without regard to the length of time the person has been confined or whether the person has served any minimum term imposed.

(c) Any person in the custody of the Department of Corrections on the date this Section becomes operative who, under prior law, would have been eligible for parole sooner than provided in this Section, shall have his parole eligibility determined under such prior law; otherwise his eligibility shall be determined under this Article and Article 8 of Chapter V." Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1003—3—3, as subsequently amended by Public Act 78—939.

Under prior law (Ill. Rev. Stat. 1971, ch. 38, par. 123—2), prisoners were eligible for parole after serving:

"(1) One-third of a determinate sentence less time credit for good behavior; or

(2) The minimum term of an indeterminate sentence less time credit for good behavior; or

(3) 20 years less time credit for good behavior. ***"

(See section 813, Administrative Regulations, Department of Corrections.) Pursuant thereto relator would automatically be eligible for parole after 13 years, or earlier dependent upon the aggregate "good time" he had earned. The new Code incorporates these provisions. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1003—3—3(a).) An individual convicted of attempted armed robbery under the new Code would be subject to a maximum sentence of 3 1/3 to 10 years. (See Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 8—4(c)(3), 1005—8—1(b)(4), (c)(4), treating attempted armed robbery as a Class 3 felony for sentencing purposes.) Had relator been sentenced under this provision, he would now be eligible for parole. He urges that the new Code sentencing provisions are retroactively applicable for parole purposes, and that, since he was sentenced on December 11, 1969, he became eligible for considera-

tion for parole on January 1, 1973, the effective date of the new Code.

We note that section 8—4 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 8—4(c)) has been amended by Public Act 78—342 (effective October 1, 1973). This amendment changes the sentencing provisions for the offense of attempt, and attempted armed robbery is treated as a Class 2 felony for sentencing purposes. Had relator been sentenced under this amendment he would have been subject to a maximum sentence of 6 years, 8 months to 20 years and would not yet be eligible for parole. For reasons hereinafter indicated, however, this amendment is not applicable to relator and those similarly situated.

Relator focuses on subparagraph (c) of section 3—3—3, which provides that any person in the custody of the Department of Corrections on the effective date of the new Code who would be eligible for parole sooner under prior law shall have his eligibility determined under prior law; "otherwise his eligibility shall be determined under this Article and Article 8 of Chapter V." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1003—3—3(c).) Relator asserts that section 3—3—3(c) is part of a plan for determining parole eligibility dates which is made complete by reference to the sentencing structure found in section 5—8—1 (section 1, article 8 of chapter V). The net effect of this argument is that prisoners sentenced under prior laws would be eligible for consideration for parole on the basis of the minimum sentence they would have received under the new Code if that results in earlier eligibility. In determining that minimum it is always assumed that a maximum sentence under the new Code would be imposed since the sentence imposed under earlier laws will always have been greater than the maximum under present law; were this not true, computation of parole eligibility under earlier laws (which is specifically provided for) would be more advantageous. Relator makes no claim that the new

Code requires that he be resentenced, or that using the new scheme for parole eligibility will have any effect on the sentence originally imposed other than rendering him eligible for parole consideration at an earlier date.

As we understand it, the State's argument is that no language of the applicable sections of the new Code requires a recomputation of relator's sentence to determine his parole eligibility date. The State argues that section 3—3—3(a) applies to relator without any recomputation of his sentence, thus making relator eligible for parole at the end of the minimum term of the indeterminate sentence actually imposed, just as under prior law. Thus, it argues, while section 3—3—3 should be retroactively applied to relator, no reference to the sentencing structure of section 5—8—1 or recomputation of sentences as to individuals sentenced prior to the new Code was contemplated by the legislature. Subparagraph (a)(3) of section 3—3—3 refers to parole eligibility for individuals who have been given a determinate sentence, not possible under the new Code. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(a).) This is cited by the State as evidence of legislative intent since, it urges, had the legislature intended that all persons sentenced in the past have their sentences recomputed under the new Code to determine parole eligibility, the reference to determinate sentencing in section 3—3—3(a)(3) would have been unnecessary. Therefore, it concludes the legislature must have intended section 3—3—3(a) to apply to persons convicted and sentenced in the past without recomputation of their sentences.

This approach, while striving to make section 3—3—3(a)(3), which refers to determinate sentencing, meaningful, ignores the language of section 3—3—3(c). Section 3—3—3(c) clearly gives to an individual who was in the custody of the Department of Corrections on the effective date of the new Code the option of having his parole eligibility determined under prior law or under

section 3—3—3 and article 8 of chapter V of the new Code, whichever would make him eligible sooner. The formula for determining the date of parole eligibility under section 3—3—3(c) specifically refers to the sentencing structure found in section 5—8—1. The reference to determinate sentencing in section 3—3—3(a)(3) does not persuade us that the legislature did not intend or contemplate recomputation of prior sentences for parole-eligibility purposes in view of the express direction of section 3—3—3(c). While recognizing that section 3—3—3 is awkwardly drafted, we believe section 3—3—3(c) must control and that relator must be treated, for parole-eligibility purposes, as though he had received the maximum sentence under the sentencing structure of the new Code.

This construction of the statute is not only supported by the direct language of section 3—3—3(c), but is also consonant with the purposes of the new Code (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1001—1—2), and the Council Commentary to section 3—3—3(c), which states:

"Subparagraph (c) may operate to hasten parole eligibility of persons already incarcerated, but it prevents application which would increase incarceration of such persons." S.H.A. (1973), ch. 38, par. 1003—3—3(c), p. 78.

The legislature's authority to apply a new parole-eligibility schedule retroactively was affirmed in *People ex rel. Kubala v. Kinney,* 25 Ill.2d 491, wherein this court applied a new statute making anyone eligible for parole at the end of 20 years to an individual serving a term of 100 years and who would not have otherwise been eligible for parole until serving one third of his sentence. "[S]ince parole is an act of clemency and grace, the legislature may change the terms and conditions for parole and make such change immediately applicable to those sentenced prior, as well as, subsequent to the date of change." 25 Ill.2d at 494.

The statute involved in *Kubala* provided "that every

person sentenced to the penitentiary regardless of the length of such sentence shall be eligible for parole at the end of 20 years." (Ill. Rev. Stat. 1961, ch. 38, par. 801.) The question was whether the proviso applied to individuals sentenced both before and after its effective date. This court concluded that it should, partly on the basis that the proviso by its terms applied to every person sentenced to the penitentiary with no mention of the date of sentencing. In this case, the legislature did insert a time reference which clarifies that the parole-eligibility formula in its entirety is to be retroactive, *i.e.,* "Any person in the custody of the Department of Corrections on the date this Section becomes operative \*\*\*". Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1003—3—3(c).

We are convinced that the correct interpretation of the parole-eligibility section of the new Code (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1003—3—3) requires that relator be treated, for parole-eligibility purposes, as if he had been sentenced under the new Code. Under these circumstances, relator has been eligible for parole since January 1, 1973, the effective date of the new Code, and at that time it became the statutory duty of the Parole and Pardon Board to consider relator as an inmate eligible for parole (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1003—3—4). The right to such consideration having accrued on January 1, 1973, it could not be affected by the sentencing provisions of Public Act 78—342 (earlier referred to) which operate to extend the period of imprisonment required to qualify for parole eligibility. Ill. Rev. Stat. 1971, ch. 131, par. 4; *cf. People v. Hollins,* 51 Ill.2d 68; *People v. James,* 46 Ill.2d 71.

The propriety of *mandamus* as a remedy has not been disputed. It is therefore ordered that the writ of *mandamus* issue directing respondents to consider relator as an inmate eligible for parole.

*Writ awarded.*