THE PEOPLE *ex rel.* GROVER TUCKER *et al.*, Plaintiffs-Appellants, *v.* PETER A. KOTSOS, Chairman, Illinois Parole and Pardon Board, Defendant-Appellee.

First District (4th Division)   No. 62014

Opinion filed September 8, 1976.—Rehearing denied October 29, 1976.

Thomas J. Kelly and Edwin R. McCullough, both of Chicago, for appellants.

William J. Scott, Attorney General, Melbourne A. Noel, Jr., Assistant Attorney General, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from an order dismissing a complaint in mandamus which petitioned the trial court to direct the defendant, Chairman of the Illinois Parole and Pardon Board, to withdraw or set bail on certain parole violation warrants lodged against the plaintiffs, Grover Tucker and Ernest Denson.

Plaintiff Tucker was arrested on a parole violation warrant and reincarcerated on August 2, 1974. Prior to his arrest, Tucker was free on bond on pending criminal charges of armed robbery and burglary. On November 8, 1974, a parole and pardon board hearing officer conducted a preliminary hearing and found probable cause based on a prior finding of probable cause made by the circuit court that he had committed the offenses of armed robbery and burglary. On November 15, 1974, a second preliminary hearing was conducted and probable cause was found that Tucker had been in possession of a firearm. Although plaintiff's parole term expired on November 28, 1974, the parole violation warrants have not been withdrawn.

Plaintiff Denson was arrested for parole violation on September 3, 1974, while on bond on a pending criminal charge of armed robbery. He was brought before a parole and pardon board hearing officer on November 27, 1974, December 27, 1974, January 10, 1975, and January 17, 1975, at which times the scheduled preliminary hearings were continued.

affidavits submitted by Denson and his counsel stated that Denson requested three continuances solely because he was advised by the hearing officer that probable cause would be found if he demanded a hearing. On January 17, 1975, plaintiff made a motion for bond on the parole violation warrant, but the request was denied. Denson's parole term expired on September 23, 1974.

Plaintiffs filed a complaint in mandamus petitioning the trial court to issue a writ of mandamus ordering the Chairman of the Illinois Parole and Pardon Board to withdraw the parole violation warrants or set bail on them. The defendant filed a motion to dismiss and for summary judgment which was granted by the court. Plaintiffs appeal to this court, seeking reversal of the order.

Illinois law (Ill. Rev. Stat. 1975, ch. 38, par. 1003—1—1 *et seq.*) provides that every person serving a term of imprisonment shall be eligible for parole when a designated portion of his sentence has been served. In each case, a hearing is conducted by the Parole and Pardon Board to determine whether parole should be granted. If parole is granted, the Board imposes certain "conditions of parole" which are deemed necessary to assist the person in leading a law-abiding life. A condition of every parole is that the individual shall not commit another offense during the parole term. If the parolee violates any condition prior to the expiration or termination of the term, the Board may (1) continue the existing parole, with or without modification, (2) parole the person to a half-way house, or (3) revoke the parole and reconfine the person. A parolee charged with a violation must be afforded a preliminary hearing before a hearing officer to determine if there is probable cause to hold him for a revocation hearing. The revocation hearing is subsequently conducted by the Board which must either revoke parole or order the person continued on parole with or without modification or enlargement of the parole conditions.

This law is in conformity with *Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593, which held that while revocation of parole is not part of the criminal prosecution, the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded certain minimal due process rights in a two-stage revocation process: first, a preliminary hearing to determine if probable cause exists and then a revocation hearing leading to a final evaluation of the facts and ultimately a determination of whether such facts warrant revocation.

The issue in this case focuses on the interval between the arrest of the parolee for an alleged violation and the Board's final decision on revocation. Petitioners contend that since probationers, by statute, are afforded the right to bail pending final resolution of their cases, parolees must be provided the same opportunity pursuant to the equal protection clause of the fourteenth amendment of the United States Constitution.

■■ ■ The United States Supreme Court in *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756, extended the *Morrissey* procedural rights to probationers, holding that there is no difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation. Clearly parole and probation differ in terms of time and application; however, despite distinguishing factors between the two, the underlying purposes are closely allied (*Hyser v. Reed* (D.C. Cir. 1963), 318 F.2d 225, 236), and the commentators have agreed that there is no difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782 n.3, 36 L. Ed. 2d 656, 661 n.3, 93 S. Ct. 1756, 1759 n.3.) The essence of both is a grant of conditional freedom which, "although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee." (*Morrissey v. Brewer* (1972), 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593.) Accordingly, the parolee's liberty has been found to be valuable and within the protection of the fourteenth amendment. (*Morrissey v. Brewer* (1972), 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593.) While the liberty insured by the Constitution is not the conditional liberty granted to parolees, it is clearly protectible as a fundamental interest.

■■ The eighth amendment does not suggest that a parolee charged with violation of a condition of parole has a right to remain at liberty through a bail procedure similar to that in the case of those charged with, but not convicted of, a crime. (*In re Whitney* (1st Cir. 1970), 421 F.2d 337, 338.) However, as pointed out in *United States v. Schrieber* (E.D. N.Y. 1973), 367 F. Supp. 791, 792, that point neither decides that a parolee or probationer may not be admitted to bail, nor excludes the conclusion that due process commends, if not requires, consideration of the question of whether either might not be admitted to bail if, on an individual basis, the circumstances would dictate otherwise. We find it unnecessary in the instant case to reach this question since the legislature has deemed it advisable to provide bail for probationers. Our concern here is whether the failure to grant bail to parolees is violative of the equal protection clause of the fourteenth amendment.

The State contends that the omission of a bond provision for parolees does not deny equal protection, even though bail is available to probationers at the discretion of the circuit court, because there is a rational basis for the distinction which is predicated on an "inherent difference" between a probationer and a parolee. It is alleged that a parolee has demonstrated by virtue of his criminal history that he represents a threat to the public, in the opinion of the sentencing court. On the other hand, a probationer has been found through similar judicial

proceedings not to require incarceration and, as a result, cannot be presumed to hold out as great a danger to society. We find this propostion to be unpersuasive in light of the United States Supreme Court's pronouncements in the *Morrissey* and *Gagnon* decisions, and directly refuted by a statute providing that the court may require potential probationers to serve a term of periodic imprisonment under certain conditions. Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3.

■■ We also reject respondent's contention that a mere showing of some rational relationship is sufficient to sustain the difference in treatment between probationers and parolees. When a classification made by the State touches on a fundamental interest, the constitutionality of its action must be judged by the stricter standard of whether it promotes a compelling State interest. (*Shapiro v. Thompson* (1969), 394 U.S. 618, 638, 22 L. Ed. 2d 600, 89 S. Ct. 1322.) The compelling interest standard is not limited in application to those cases involving "suspect classifications"; for whenever a fundamental interest is impaired, the courts will demand a more convincing showing that the classification is necessary to achieve the State objective. (*Shapiro v. Thompson* (1969), 394 U.S. 618, 638, 22 L. Ed. 2d 600, 89 S. Ct. 1322.) Under this standard, we find that the denial of bail to parolees is a violation of the equal protection clause of the United States Constitution.

A similar result was reached by the Federal District Court in *United States ex rel. Dereczynski v. Longo* (N.D. Ill. 1973), 368 F. Supp. 682, an action brought by four parolees incarcerated in the Cook County Department of Corrections and charged with parole violations. The court found that the classification did not present a legitimately defensible difference, in light of the *Gagnon* decision, since a valid classification must be reasonable, not arbitrary, and based upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. Therefore, it was held that if one group was so privileged, then so must the other.

■■ Because the parole provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—1—1 *et seq.*), are silent on the right to bail, we construe the statute to permit parolees to be admitted to bond in proper cases and thereby avoid holding it unconstitutional. We are aware that the Federal District Court in *In re Whitney* (1st Cir. 1970), 421 F.2d 337, has concluded that the interests which the government may protect in the parole revocation stage of the criminal process are much broader than before trial and that the balance of interests is not the same as that involved in confining an accused who has not been found guilty. However, that decision was rendered prior to *Morrissey* and was predicated solely on the fact that the eighth amendment does not guarantee a right to bail pending parole revocation.

We are also aware of the recent decision of *Liistro v. Warden* (1976), ___ Conn. ___, ___ A.2d ___, which decided the same question and reached a different result. The Connecticut statute, like that of Illinois, expressly provided that probationers could be admitted to bail, but was silent as to bail for parolees. The Connecticut Supreme Court found that this law posed no equal protection problem, explaining that the legislature could rationally have determined that bail should be granted to one group but withheld from another since there were "substantial differences in status" between probationers and parolees. The most crucial distinction was that probationers are subject to judicial control while parolees are subject to the administrative control of the parole board. Weight was also given to the fact that probation is granted because the sentencing court has found confinement to be unnecessary for the protection of the public and because it provides a better chance for rehabilitation, whereas parole is technically a custody status. These differences were considered to bear a reasonable and just relation to parole and probation status, thereby providing a rational basis for the classification.

We disagree with this decision for several reasons. First, as stated above, we believe that the stricter test of compelling interest applies since the classification touches on the parolee's conditional liberty. *Liistro* states that the putative right to bail is not a right, much less a fundamental right. However, it is clear that even though there may be no eighth amendment right to bail in this situation, the parolee does have an interest in his conditional liberty, regardless of whether this liberty is conferred as a privilege. It is equally apparent that the constitutionality of State action no longer turns on whether the interest is deemed to be a "right" or a "privilege." (*Graham v. Richardson* (1971), 403 U.S. 365, 374, 29 L. Ed. 2d 534, 91 S. Ct. 1848.) Since the termination of parole may inflict a "grievous loss" on the parolee and the conditional liberty has been found to be valuable and protectible under the fourteenth amendment (*Morrissey v. Brewer* (1972), 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593), we believe that the parolee has a fundamental interest and, therefore, that the compelling State interest test applies.

■■ Second, it is our opinion that the constitutional guarantee of equal protection should not turn on the fact that the two systems are not administered by the same branch of government. The dissenting justice in *Liistro* states that the majority is saying in essence that the fact that parolees and probationers are liberated by different agents of the State provides a rational ground for allowing bail for one and not the other. He argues persuasively that there are no differences between parolees and probationers which would justify the legislature in making the determination that society needs protection from parolees but not from

probationers, when both have previously been considered "good risks." State action by whatever branch of government must meet the standards set forth in the Constitution. The fact that parole and probation are controlled by separate entities does not provide a sufficient basis for withholding bail from parolees, while making it available to probationers.

■■ ■ Finally, we disagree, insofar as Illinois law and policy are concerned, with the proposition that probation provides a better chance for rehabilitation than parole which is merely a custody status. With probation, the sentencing judge must exercise sound discretion in deciding in what way the interest of the public will best be served and protected, with all possible emphasis on rehabilitative programs as alternatives to imprisonment. (*People v. Hobbs* (1966), 56 Ill. App. 2d 93, 98, 205 N.E.2d 503.) The trial court has an obligation to the public as well as the person found guilty of a crime and must consider the punishment warranted under the circumstances, including the nature of the offense, the attending circumstances, the character and propensities of rehabilitation, the security of the public and other pertinent matters. (*People v. Jackson* (1972), 3 Ill. App. 3d 574, 576-77, 277 N.E.2d 900.) Similarly, with parole, the Parole and Pardon Board has great discretion in determining who shall be granted parole. However, the Board must not parole a person eligible for parole if it is determined that there is a substantial risk that he will not conform to reasonable conditions of parole, or his release at that time would deprecate the seriousness of his offense or promote disrespect for the law. (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5(c).) We believe that an evaluation based on these criteria necessarily involves making a determination similar to that of the sentencing court with probation, but one which is most likely more comprehensive. As stated in *People v. Griffin* (1972), 8 Ill. App. 3d 1070, 1072, 290 N.E.2d 620:

> " * * * [T]he parole authorities have two important advantages over the trial court. First, they have access to institutional reports, psychological and sociological reports, and sometimes even psychiatric reports concerning the inmate. [Citation.] Second, the parole authorities are making their judgment at the time of parole eligibility while the trial court is forced to make a prospective determination as to how soon the offender might be rehabilitated. [Citation.]"

Since risk is involved with both probation and parole, we think it unwise to judge the rehabilitative potential of either system based upon differences of time and application, particularly where the purposes are closely allied.

■■ Notwithstanding our holding that bail must be made available to

parolees since probationers are so privileged, we will not compel the Parole and Pardon Board to withdraw the parole violation warrants or to admit the plaintiffs to bail pending the parole revocation hearings because mandamus is not the proper form of relief in this case. The writ of mandamus is an extraordinary legal remedy which is used to coerce action only when it is clearly shown that the law imposes a duty upon the respondent to act in the particular manner requested. (*People ex rel. Miller v. City of Granite City* (1967), 87 Ill. App. 2d 234, 236, 231 N.E.2d 272.) While parolees are entitled to bail on an equal basis with probationers, no showing has been made that the Parole and Pardon Board has the authority or duty to issue it. Mandamus actions do not create duties or confer power to perform them. (*Coughlin v. Chicago Park District* (1936), 364 Ill. 90, 110, 4 N.E.2d 1; *People ex rel. Satas v. City of Chicago* (1972), 5 Ill. App. 3d 109, 112, 282 N.E.2d 739.) Even assuming that the Parole and Pardon Board did have a duty to grant bail in proper cases, an additional reason for denying the writ is that mandamus will not issue to compel the exercise of a discretionary power in a particular manner. (*Templeman v. City of Rochelle* (1964), 52 Ill. App. 2d 201, 207, 201 N.E.2d 862.) Granting bail necessarily calls for the exercise of informed judgment and discretion, and this court will not direct such a decision.

While we do not wish to intrude into the legislative domain, it would be improper, in our opinion, to hold that parolees are entitled to be admitted to bail, in proper cases, but leave them without further recourse. We therefore hold that on petition of a parolee, the circuit court, in its discretion, may set bail on pending parole violations. In situations like these at bar, where the court has admitted the parolee to bail for the alleged commission of an offense, the judge, in his discretion, may also set bail on the pending parole violations. (Accord, *United States ex rel. Dereczynski v. Longo* (N.D. Ill. 1973), 368 F. Supp. 682.) This should not be construed as an interference with the authority of the Parole and Pardon Board since the parolee may always be compelled to appear at the revocation hearing. Moreover, it may avoid disruption in familial and community ties, as well as the possibility of loss of employment which may result when a parolee is required to spend months incarcerated, and needlessly in those cases where parole is not revoked, awaiting the final determination of the revocation hearing.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER and ADESKO, JJ., concur.