UNITED STATES of America ex rel. William SCOTT, Petitioner-Appellant,

v.

ILLINOIS PAROLE AND PARDON BOARD and Lou Brewer, Respondents-Appellees.

No. 79-2131.

United States Court of Appeals, Seventh Circuit.

Submitted * Oct. 28, 1981.

Decided Feb. 9, 1982.

Opinion on Denial of Rehearing and Rehearing En Banc June 18, 1982.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

William Scott, pro se.

Carolyn B. Notkoff, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, and SPRECHER and CUDAHY, Circuit Judges.

PER CURIAM.

This is an appeal from the denial of a petition for a writ of habeas corpus. For the reasons which follow, we reverse the decision of the district court and remand for further proceedings.

I

Petitioner William Scott is an inmate at the Stateville Correctional Center in Joliet, Illinois, serving a 25 to 40 year sentence for murder. On March 6, 1979, Scott was granted leave to file his *pro se* petition for habeas corpus. The petition alleged that the Illinois Parole and Pardon Board, now the Prisoner Review Board, had violated Scott's constitutional rights by denying his request for parole for the stated reason that release would deprecate the seriousness of the offense for which he was imprisoned. It also alleged that Scott's rights had been violated in that, unlike other Illinois state prisoners, he was not entitled to a mandatory release date under Ill.Rev.Stat. ch. 38, § 1003–3–2.1 (1979). Scott alleged that he had served the minimum amount of time required under the sentence imposed on him,[1] but had twice been denied parole based on the seriousness of the offense. He claimed he was entitled to immediate release and requested the court to order such relief.

The respondents to the petition were the Warden of Stateville Correctional Center and the Illinois Prisoner Review Board. In reply to the district court's order that they answer the petition, respondents filed a motion for summary judgment with a supporting memorandum of law in which they argued, *inter alia*, that petitioner did not have a constitutional right to parole, that the reason given by the board for the denial was constitutionally sufficient, and that the fact that other inmates with similar records were paroled was not a denial of petitioner's constitutional rights.

The district court granted respondent's motion and dismissed the petition. It held that the Illinois statute governing parole release determinations did not create an expectancy of release on parole and that therefore, under *Greenholtz v. Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), due process did not apply. The Court further held that, even if due process did apply, the

reason provided by the Board for its decision to deny Scott parole was constitutionally sufficient. Finally, the Court held that the different treatment accorded Illinois prisoners sentenced under the new sentencing law did not violate Scott's Fourteenth Amendment right to equal protection of the law.

II

In *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975), *cert. denied*, 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976), this court held that when a state holds out the possibility of parole and makes it an integral part of its penological system, "due process includes as a minimum requirement that reasons be given for the denial of parole release." *Id.* at 800. In this case, we are required to reconsider this conclusion in light of the Supreme Court's more recent decision in *Greenholtz v. Nebraska Penal and Correctional Center, supra.*

*Greenholtz* explicitly rejected the underlying rationale for our holding in *Richardson* that due process requirements apply to Illinois parole release procedures. It held that the mere fact that a state holds out the possibility of parole is not sufficient to invoke the protection of the Due Process Clause of the Fourteenth Amendment.

> That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. To that extent the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process. *Meachum v. Fano, supra,* 427 U.S. at 225; 96 S.Ct. at 2538 (1977); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1977).

442 U.S. at 11, 99 S.Ct. at 2105.

The *Greenholtz* Court also held, however, that even though the mere existence of a parole system does not give rise to a liberty interest entitled to constitutional protection, the specific statute governing parole release determinations may have such an effect if it is phrased in such a way as to provide the inmates with a legitimate expectation of release on parole. The Court specifically found that the Nebraska statute there under consideration did create such

---

1. At the time his petition was filed Scott had    been in prison for approximately eleven years.

an interest. In so holding, however, it emphasized that its conclusion was based on the unique structure and language of the Nebraska statute and cautioned that "whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." 442 U.S. at 12, 99 S.Ct. at 2106.

Since *Greenholtz*, other circuits that have considered the issue have generally found the language and structure of other state parole release statutes sufficiently unlike Nebraska's so as not to confer on state prisoners a constitutionally protected expectation of parole. *See Candelaria v. Griffin*, 641 F.2d 868 (10th Cir. 1981), and cases cited therein. *But see Williams v. Missouri Board of Probation and Parole*, 661 F.2d 697 (8th Cir. 1981). However, in none of these cases was the language of the statute considered by the court the same or even similar to that contained in the statute now before us. For this reason, these cases are of little relevance to the precise issue raised here. Resolution of that issue, as the Supreme Court indicated in *Greenholtz*, requires careful analysis of the specific statute under which parole release determinations are made. Naturally, the Nebraska parole release statute under consideration in that case provides a convenient starting point for that analysis.[2]

The Nebraska statute at issue in *Greenholtz* provided that the Nebraska Parole Board "shall" order the release of a prisoner eligible for parole "unless it is of the opinion that his release should be deferred" because of the existence of any of four specified criteria. In holding that this statute created an expectancy of release entitled to some measure of constitutional protection, the *Greenholtz* majority accepted the inmate's argument that "the structure

of the provision together with its use of the word 'shall' binds the Board of Parole to release an inmate unless any one of the four specifically designated reasons are found." 442 U.S. at 11–12, 99 S.Ct. at 2105–2106. The inmates had argued that the language of the statute created a presumption that parole release would be granted, which in turn created a legitimate expectation of release, absent the finding that one of the prescribed justifications for deferral existed. A majority of the Court agreed.

The Illinois parole release statute at issue in this case is practically a mirror image of the Nebraska statute. Section 1003-3-5(c) of the Illinois Unified Code of Corrections, Ill.Rev.Stat. ch. 38, § 1003-3-5(c) (1979) provides:

> (c) The Board shall not parole a person eligible for parole if it determines that:
> (1) there is a substantial risk that he will not conform to reasonable conditions of parole; or
> (2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or
> (3) his release would have a substantial adverse effect on institutional discipline.

Instead of directing the Board to release an eligible inmate unless one of the conditions is found, Illinois has simply stated the rule in the negative—the Board shall not release the inmate if one of the conditions is found. Even the specified conditions under which release is to be deferred are the same, except for the fact that the Nebraska statute includes an additional reason for deferral which Illinois' does not. Thus, like Nebraska's parole release statute, section 1003-3-5(c) can be read as creating a legitimate expectation of release on parole.[3]

---

2. Neb.Rev.Stat. § 83-1, 114(1) at that time provided:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
> (a) There is a substantial risk that he will not conform to the conditions of parole;
> (b) His release would deprecate the seriousness of his crime or promote disrespect for law;
> (c) His release would have a substantially adverse effect on institutional discipline; or
> (d) His continued correctional treatment, medical care, or vocational or other training

in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

3. In *United States ex rel. McCalvin v. Irving*, 504 F.Supp. 368 (C.D.Ill.1980), the United States District Court for the Central District of Illinois applied *Greenholtz* to section 1003-3-5(c) and concluded that because it lacked the precise "shall/unless" language and structure of Nebraska's statute, it did not give rise to a constitutionally protected liberty interest. We think this is a too narrow reading of *Greenholtz*.

However, by stating its rule in the negative Illinois has left open the possibility that its statute can also be reasonably read as not creating an expectancy of release on parole. It can be read as merely a statement by the Illinois legislature as to when the Board must deny parole, leaving the Board free in the absence of those conditions to exercise its own discretion in deciding whether or not parole should be granted. Under this construction, the statute would not create a legitimate expectation of release and due process considerations would not apply. *See Averhart v. Tutsie,* 618 F.2d 479 (7th Cir. 1980) (where legislature has invested Parole Board with almost total discretion in such matters, inmate had no legitimate expectation of release).

Although there is no authoritative state court decision indicating which of these two possible constructions is correct,[4] both the Council Commentary to section 1003–3–5(c) and the Board's own Rules Governing Parole persuade us that the Illinois parole release statute, like Nebraska's, requires the Board to release an inmate who is eligible for parole unless one of the specified reasons for denial are found to exist. The Council Commentary reads in part:

Subparagraph (c) expands the vague charge to the Board to determine "wheth-er [the offender] is capable again of becoming a law-abiding citizen." Section 203 (repealed). The Board should state one or more of the reasons listed in subparagraph (c) as the basis for its decision denying parole as required by subparagraph (f). Additional reasons may also be stated.

Ill.Ann.Stat. ch. 38 § 1003–3–5, pp. 87–88 (Smith-Hurd). This language indicates that, while other reasons may also be given for the denial, such reasons are to be additional to, and not in place of, the statutory reason or reasons relied upon. The implication is that parole must be granted where none of the specified reasons for denial are found to exist.[5]

The Rules of the Illinois Prisoner Review Board, promulgated pursuant to Ill.Rev. Stat. ch. 38, § 1003–3–2(d), provide further support for this reading of the statute. Rule V entitled *Basis for Denying Parole* lists only the three statutorily prescribed reasons for denial with a set of factors under each for the Board to consider in determining whether it is met.[6] No other basis for a decision denying parole is listed. Rule VII entitled *Denial of Parole* states specifically that an order denying parole "shall contain the reason or reasons for denial based on No. V above and a concise statement of facts supporting the reason or reasons given."

---

**4.** Although the Illinois courts have frequently noted that, as a general matter, parole is a matter of grace and clemency rather than of right, *People ex rel. Jones v. Brantley,* 45 Ill.2d 335, 337–38, 259 N.E.2d 33 (1970); *People v. Hawkins,* 54 Ill.2d 247, 252, 296 N.E.2d 725 (1973); *People ex rel. Weaver v. Longo,* 57 Ill.2d 67, 309 N.E.2d 581 (1974), they have not interpreted the scope of the interest, if any, this particular provision was intended to afford Illinois state prisoners. The Illinois Appellate Court came closest to doing so in *People ex rel. Tucker v. Kotsos,* 42 Ill.App.3d 812, 818, 1 Ill.Dec. 516, 356 N.E.2d 798 (1976). In comparing a parole release determination with a trial court's decision of whether to grant probation, the court stated:

Similarly, with parole, the Parole and Pardon Board has great discretion in determining who shall be granted parole. However, the Board must not parole a person eligible for parole if it is determined that there is a substantial risk that he will not conform to reasonable conditions of parole, his release at that time would deprecate the seriousness of his offense or promote disrespect for the law. ·

While this language seems to indicate that the second interpretation of section 1003–3–5(c) under which no liberty interest is created is correct, we do not find it conclusive since it is not clear on the issue and appeared only as dicta in the court's opinion. *Compare Averhart v. Tutsie, supra,* (Where Indiana Supreme Court had expressly held that that state's parole release statute was unlike Nebraska's in that it created no expectancy of release, this court is bound by that interpretation).

**5.** Although the word "Additional" might also be read as meaning alternative, we are unpersuaded that this is the intended meaning in this context.

**6.** Rule V reads:
   V. BASIS FOR DENYING PAROLE
   In accordance with statute, the Board shall not parole a candidate if it determines that:
   A. There is substantial risk that the candidate will not conform to reasonable conditions of parole based on one or more of the following factors:
   1. Existence of prior adult felony convictions (mitigating as well as aggravating factors to be considered).

■ In light of these rules, it appears that the Board itself has interpreted § 1003–3–5(c) as requiring a finding that one of the statutory criteria exist before it can deny an eligible inmate his parole. Read in this way, Illinois' parole release statute is no different than the Nebraska statute considered by the Supreme Court in *Greenholtz.* Like Nebraska's it creates a presumption that an eligible inmate will be paroled unless one of the specified grounds for denial is found to exist and, in doing so, provides him with a legitimate expectation of parole entitled to some measure of constitutional protection.

### III

Having concluded that Illinois' parole release statute does create a constitutional liberty interest, it must now be determined whether the reason for denial given by the Board in this case is constitutionally sufficient.

In its notice to Scott informing him of the decision to deny his request for parole, the Board stated:

The above action is taken based on the Board's feeling that release at this time would deprecate the severity of the crime for which you were convicted namely, Murder, receiving a 25–40 year sentence. Accordingly, your minimum sentence of 25 years, does not make you eligible to be provided with a release date under the new law.

(R. 11, Exhibit A.) Scott claims that the Board's use of this "boiler plate" reason for denying his parole is constitutionally inadequate.

■ In *United States ex rel. Richerson v. Wolff, supra,* 525 F.2d at 804, this court adopted the test enunciated by the Second Circuit in *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), for determining whether a statement of reasons for a denial of parole is sufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. In *Johnson,* 500 F.2d at 934, the Second Circuit had said:

To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the Board's inferences are based.

■ We believe this is still the applicable test for determining whether a statement of reasons for a decision denying parole is constitutionally adequate. *Greenholtz* makes clear that, even when the Due Process Clause applies to a parole release determination, there is "nothing in the due process concepts as they have thus far evolved that requires the Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional re-

2. An apparent pattern of aggressive or assaultive behavior (misdemeanor offenses also considered).

3. Prior adult parole or probation violations within five years prior to the present offense.

4. Refusal to be supervised on parole.

5. No means of financial support or no place of residence. (Continuance not to exceed six months to seek resolution of problem.)

6. A psychiatric examination determines the candidate is not likely to conform.

B. Release of the candidate would deprecate the seriousness of the offense or promote disrespect for the law, based on one or more of the following factors:

1. The offense is one of murder, attempted murder or killing of an individual, robbery with a weapon, rape, indecent liberties, devi-

ate sexual assault, aggravated kidnapping or kidnapping for ransom, armed violence, treason, aggravated arson, treason or calculated criminal drug conspiracy.

2. The aggravating as well as mitigating circumstances as described in Chapter 38, Sections 1005–5–3.1 and 1005–5–3.2, Illinois Revised Statutes.

C. Release would have a substantially adverse effect on institutional discipline based on one or more of the following factors as established by the finding of an Administrative Review Board.

1. Physical attack on another inmate or institutional staff.

2. Possession of weapons or drugs.

3. Repeated violation of major institutional rules.

4. Violation of any act prohibited by law.

lease."[7] 442 U.S. at 15, 99 S.Ct. at 2107. However, we do not read the *Johnson* test to require any such summary of the evidence relied upon. As we read *Johnson*, it requires only that the inmate be told why his request for parole has been denied. This can be accomplished simply by informing him of what in his record was felt by the Board to warrant his denial and why.

Turning to the particular facts of this case, we find we are unable to determine on the record before us whether the statement of reasons given by the Board meets this test. In two previous decisions, this court has upheld parole denials based on the seriousness of the offense for which the inmate was imprisoned. *Richerson, supra; Garcia v. United States Board of Parole*, 557 F.2d 100 (7th Cir. 1977). However, in both *Richerson* and *Garcia*, we were careful to point out that in its statement of reasons for the denial the parole board had indicated that it had considered the inmate's specific conduct, and not just the statutory offense for which he had been found criminally liable.[8] It is the failure of the Board to do the same here that causes us difficulty.

We do not dispute the fact that the Board could, at least insofar as the Constitution requires, adopt a practice of automatically denying parole to inmates convicted of certain offenses without regard to their specific conduct. Certain offenses, like murder, for instance, are by definition so serious that the Board could reasonably conclude that early release on parole would be inappropriate, regardless whether there were additional aggravating circumstances accompanying it. The Board is expressly empowered to make such a determination and it is not for this court to set it aside.

The difficulty in this case, however, is that we do not know if in fact the Board has adopted such a practice. Although the fact that the inmate was convicted of murder is listed in the Board's Rule V as one of the factors which it considers in determining whether release would deprecate the seriousness of the offense, we do not know from the record before us whether the Board automatically denies parole to all inmates whose commitment offense is murder. If it does not, then the reason for denial given by the Board in this case fails to satisfy the *Johnson* test. For unless the Board denies parole to all inmates whose commitment offense is murder, then its statement that it is denying parole for that reason in this case is tantamount to no reason at all. Clearly, if the Board does grant parole to some inmates whose commitment offense is murder, then its refusal to do so here, unless it is completely arbitrary, must be for some reason other than the fact that Scott was convicted of murder. If that is the case, we think that due process requires at a minimum that that reason be given.

We therefore find it necessary to remand this case to the district court to allow it to determine what in fact the Board's practice is. If that court finds that the Board does grant parole to persons whose commitment offense is murder, it should order the Board to reconsider Scott's request for parole and either grant that request or provide him with a sufficient statement of reasons for its denial.

## IV

Lastly, Scott appears to argue that his constitutional rights have been violated by virtue of the fact that he is not eligible for release under Ill.Rev.Stat. ch. 38, § 1003-3-3(c). This section is part of the new sentencing law in Illinois under which the parole system has been eliminated and prisoners are assigned mandatory release dates. By its terms, the new law applies only to persons sentenced after February 1, 1978.

---

**7.** In rejecting this requirement, Chief Justice Burger wrote for the majority in *Greenholtz*, "[t]o require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole release determination with a guilt determination." 442 U.S. at 15–16, 99 S.Ct. at 2107–2108. However, the Court implicitly approved the requirement that the parole authority provide the inmate with a statement of reasons when it denies parole, stating "[t]he Board communicates the reason for its denial as a guide to the inmate for his future behavior. *See Franklin v. Shields*, 569 F.2d at 800 (en banc)." *Id.* We think any reason for denial necessarily assumes some fact or facts about the inmate's case. It is this fact or facts that the Board should include in its statement of reasons.

**8.** In *Richerson*, the Board's statement of denial, in addition to listing the inmate's statutory offenses, specifically referred to the fact that police officers had been wounded while doing their duty. 525 F.2d at 803. In *Garcia*, the Board noted that the inmate's conduct "involved the detonation of explosives during the bombing of several business establishments." 557 F.2d at 106.

Although some prisoners sentenced prior to that time may elect to have a mandatory release date assigned under the new law, that option is not available to prisoners with indeterminate sentences whose minimum term is twenty years or more. Ill. Rev.Stat. ch. 38, § 1003–3–2.1.

■■■ The fact that Scott is not entitled to a mandatory release date under the new act raises no claim cognizable under federal habeas corpus. States are certainly free to amend their sentencing laws and, having done so, they are not required to apply them retroactively to persons who have been validly sentenced under the law as it previously existed. In fact, where application of the new law would result in a more severe punishment, they are expressly prevented from doing so by the constitutional prohibition against *ex post facto* laws. *Welsh v. Mizell*, 668 F.2d 328 (7th Cir. 1982); *Rodriguez v. United States Parole Commission*, 594 F.2d 170, 173 (7th Cir. 1979). While it is unclear whether application of the new sentencing procedure here would result in a longer or shorter term of imprisonment, in either case Scott has no right to have the new law applied. Having been properly sentenced under the law as it existed at the time of his conviction, he is not entitled to modification at this time.

## V

In conclusion, we hold that the Illinois parole release statute provides inmates still under the State's parole system with a constitutionally protected liberty interest. This being so, due process requires at a minimum that an inmate whose request for parole is denied be provided with a statement of reasons for the denial. Because we cannot determine from the record before us whether the statement of reasons given by the Board in this case is constitutionally sufficient, we remand the case for further proceedings. Finally, Scott's objection to the fact that he is not entitled to a manda-

tory release date under Illinois' new sentencing law fails to state a claim for which federal habeas relief is available.

Accordingly, the district court's judgment is affirmed in part, and reversed and remanded in part.

Before CUMMINGS, Chief Judge, and PELL, SPRECHER, BAUER, WOOD, CUDAHY, ESCHBACH and COFFEY, Circuit Judges.*

### ORDER

On consideration of the petition for rehearing and suggestion for rehearing *en banc* filed in the above-entitled matter by counsel for the Respondents-Appellees, a vote of the active members of the court was requested, and less than a majority of the members of the court who voted have voted to grant a rehearing *en banc*.[1] All of the judges on the original panel have voted to deny the petition for rehearing. Accordingly,

IT IS ORDERED that the aforesaid petition for rehearing and suggestion for rehearing *en banc* be, and the same is hereby, DENIED.[2]

COFFEY, Circuit Judge, dissenting:

I dissent from the order denying the petition for rehearing because, procedural questions aside, I do not believe that it is reasonable or proper for the vote of a former (deceased) member of the court to be used to prevent a majority of the remaining active members from rehearing this case which raises significant legal questions of potentially wide-spread impact. This is especially true where Judge Sprecher's initial vote was issued in anticipation of a request that the remainder of the active members vote on the suggestion for rehearing "en banc." Circuit Judge Sprecher voted to deny rehearing and rehearing *en banc* on March 3, 1982. A vote was not requested until May 7, 1982. Thus, obviously Judge Sprecher cast his vote nine weeks prior to

---

\* Circuit Judge Richard A. Posner did not participate in the consideration or decision of this petition.

1. Circuit Judge John L. Coffey requests that he be shown as one of the judges who voted to rehear the case *en banc*. Judge Coffey's statement dissenting from this order is attached hereto.

2. Circuit Judge Sprecher, a member of the original panel, voted to deny rehearing and to deny

rehearing *en banc*. Judge Sprecher died on May 15, 1982.

Chief Judge Cummings and Judges Pell, Bauer, Wood, Cudahy, Eschbach and Coffey voted on the question whether Judge Sprecher's vote should be counted in the resolution of the petition. A majority of these judges voted to count Judge Sprecher's vote; and it was so counted, together with the votes of the other judges listed at the head of this order.

the date on which the vote of the other court members was requested. Judge Sprecher died just eight days after this request. The final vote on the rehearing was not completed until May 20, 1982. I analogize the acceptance of Judge Sprecher's vote to a trial court's granting of a Motion to Dismiss before argument was scheduled, heard or requested.