UNITED STATES ex rel. Simon ARNOLD, Petitioner,

v.

ILLINOIS PRISONER REVIEW BOARD, et al., Respondents.

No. 92 C 5786.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1992.

Arnold, pro se.

No appearance filed.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Simon Arnold ("Arnold") has filed a petition (the "Petition") under 28 U.S.C. § 2254 against the Illinois Prisoner Review Board (the "Board"). For the reasons stated in this memorandum opinion and order, the Board is ordered to answer the Petition.

### Procedural Background

On October 18, 1971 Arnold pleaded guilty to two counts of murder and received two concurrent prison sentences of from 20 to 60 years. After he had served a portion of his sentence, Arnold appeared before the Board seeking parole in four consecutive years—1979, 1980, 1981 and 1982. Each time the Board denied parole, stating that "release at this time would deprecate the seriousness of the offense, and would promote disrespect for the law...."

In the fall of 1982, after Arnold had secured a favorable judgment in a habeas corpus action filed in the United States District Court for the Central District of Illinois, the Board scheduled a special rehearing for Arnold and granted him parole release effective December 23, 1982. After completing 35 months of his 36–month parole term, Arnold was arrested for the crime of armed robbery. Although Arnold maintains that he did not commit that crime, he was convicted in the Cook County Circuit Court and sentenced to a 10–year prison term, to run concurrently with his sentences for murder. On October 27, 1987 Arnold again appeared before the Board. Based upon his new conviction, the Board declared Arnold a parole violator as of November 17, 1985.

Arnold has since completed the armed robbery sentence. In May 1990 and 1991 Arnold again appeared before the Board and was denied parole each time. Arnold does not challenge those determinations in this case. Then on May 27 of this year Arnold appeared before the entire Board for an en banc review of his parole status. At that time the Board once more denied parole, stating these reasons:

> Resident Simon Arnold was afforded a parole consideration hearing before a panel of the Prisoner Review Board at Centralia Correctional where he is serving two 20–60 year concurrent sentences for two counts of murder. Apparently the two victims were shot as result of a drug transaction which went awry. Within six months after having been paroled on the murder conviction parole was violated by a ten year conviction for armed robbery.

> The file reflects significant educational attainment with assignment in the Honor Dorm as well as pragmatic participation. Parole plans were discussed and considered.

> However, despite the positive aspects of the institutional segment of the residents [sic] life the Board continues to be gravely concerned with the loss of human life or in the instant case, two lives. Further, the Board concludes that parole at this time would deprecate the serious nature of the case and would, in fact, promote disrespect for the law.

> Therefore, parole is denied.

On June 22 Arnold applied to the Board for a rehearing, raising essentially the same claims that he raises in his current Petition. On July 15 the Board denied Arnold's request.

### Arnold's Petition

Before this Court Arnold raises two claims challenging the Board's most recent denial of parole:

1. In light of the earlier grant of parole on Arnold's murder convictions, the Board's determination that it "continues to be gravely concerned with the loss of human life or in the instant case, two lives" and that "parole at this time would deprecate the serious nature of the case

and would, in fact, promote disrespect for the law" is arbitrary and capricious, an abuse of discretion and "tantamount to a denial of parole for no reason at all."

2. Arnold has been subjected to unequal treatment in that the Board does not deny parole to all individuals convicted of murder. As evidence of that claim, Arnold submits for consideration the case of Phillip Kline, a white male who was convicted of three murders, including the bludgeoning death of a 17–year-old girl in 1973 during a time that he was dealing in drugs and two later shooting deaths and a murder attempt (also drug-related). Kline was released on parole in May 1992.

According to Arnold the Board "has not established nor shown a 'risk' involved in granting parole, which outweighs the factors in favor of granting parole...."

### Standard of Review

■ *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 9–10, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1978) characterized the problem at issue here in these terms:

> The parole-release decision, however, is more subtle [than that of parole revocation] and depends on an amalgam of elements, some of which are factual, but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual.

*Greenholtz* accordingly held that the mere existence of a parole system does not give rise to a liberty interest protectable by the Due Process Clause (*id.* 442 U.S. at 11, 99 S.Ct. at 2105) but that the specific statute governing parole release decisions may cre-

ate such an interest if phrased in such a way as to create a legitimate expectation of release on parole (*id.* 442 U.S. at 12, 99 S.Ct. at 2106).

■ Four years later *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1190 (7th Cir.1982) held that the statutes governing parole release decisions for Illinois prisoners do create such a liberty interest, entitling an inmate to due process protection in parole release decisions—including the right to a statement of reasons if parole is denied. To test the adequacy of such a statement of reasons in due process terms, *Scott, id.* adopted this formulation from *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925, 934 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974):

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the Board's inferences are based.

*Scott* had to deal with this statement by the Board in having denied parole to the prisoner in that case (669 F.2d at 1190):

> The above action is taken based on the Board's feeling that release at this time would deprecate the severity of the crime for which you were convicted namely, Murder, receiving a 25–40 year sentence. Accordingly, your minimum sentence of 25 years, does not make you eligible to be provided with a release date under the new law.[1]

---

1. [Footnote by this Court] That reference to "the new law" is to Ill.Rev.Stat. ch. 38, ¶ 1003–3–2.1, which requires the Board to set a fixed release date for certain qualifying prisoners. Exempted from the law is "any person sentenced to an indeterminate sentence under the law in effect prior to the effective date of this Amendatory Act of 1977 in which the minimum term of such sentence is 20 years or more" (*id.* ¶ 1003–3–2.1(b)). See the discussion of a similar reference to "the new law" in *Walker v. Prisoner Review Board,* 694 F.2d 499, 501–02 (7th Cir. 1982).

Our Court of Appeals found that statement insufficient under the *Johnson* test because the only reason that the Board had given for denial of parole was that Scott had been convicted of murder—nothing in the Board's statement indicated that it had considered any of the specific conduct for which he had been found guilty.[2] Although it would not offend due process if the Board were to adopt a policy denying parole to all inmates convicted of murder, nothing in the *Scott* record suggested that had been the Board's practice. As *Scott*, 669 F.2d at 1191 put it:

> [U]nless the Board denies parole to all inmates whose commitment offense is murder, then its statement that it is denying parole for that reason in this case is tantamount to no reason at all. Clearly, if the Board does grant parole to some inmates whose commitment offense is murder, then its refusal to do so here, unless it is completely arbitrary, must be for some reason other than the fact that Scott was convicted of murder. If that is the case, we think that due process requires at a minimum that that reason be given.

### Application of the Standard

■ Arnold's argument in his Petition clearly traces the court's rationale in *Scott*. Certainly it is difficult to distinguish the Board's conclusory statement as to why it denied Arnold's request for parole from the denial that was found insufficient in *Scott*. Though the Board prefaced its statement as to Arnold with a brief summary of what was "[a]pparently" the occurrence that resulted in his murder conviction and an equally brief reference to his parole violation, what is *not* present here is the kind of statement of reasons that *Scott* calls for.[3] And that deficiency is difficult to under-

stand when the due process standard is so undemanding—when all that the Board needs to demonstrate is that it considered all the relevant factors. It is not required to demonstrate that the risks inherent in releasing a prisoner outweigh the factors in favor of granting parole. As *Heirens v. Mizell*, 729 F.2d 449, 465 (7th Cir.1984) has said:

> [T]here is no set of facts which, if shown, entitle an Illinois inmate to parole under Illinois law as it has been interpreted by its Supreme Court.

Arnold also argues that the Board denied him equal protection of the laws by denying his request for parole while granting a like request by Phillip Kline. Arnold claims that he is a much better candidate for parole than Kline (see the account of Kline's offenses in *People v. Kline*, 99 Ill. App.3d 540, 54 Ill.Dec. 697, 425 N.E.2d 562 (3d Dist.1981)). Courts have repeatedly rejected such equal protection arguments—after all, the decision whether or not to release an inmate on parole involves a congeries of discretionary factors (see *Greenholtz*, 442 U.S. at 10, 99 S.Ct. at 2105). This Court's colleague Honorable Marvin Aspen put the matter well in *United States ex rel. King v. McGinnis*, 558 F.Supp. 1343, 1348 (N.D.Ill.1983) (citations omitted):

> The Constitution does not command the parole board to treat all murderers equally simply because they were convicted of the same crime. The equal protection clause only guarantees an individual or group the right to be free from purposeful or invidious discrimination. A mere inconsistency in prison management may not in itself constitute a cognizable equal protection claim. Absent an allegation that the Board exercised its broad discretion in an intentionally or purposefully discriminatory manner, its more favor-

---

**2.** *Scott* contrasted two cases in which our Court of Appeals had upheld parole denials based upon the seriousness of the offense: *United States ex rel. Richerson v. Wolff*, 525 F.2d 797, 803 (7th Cir.1975), in which the Board's denial had specifically referred to the fact that police officers had been wounded while doing their duty, and *Garcia v. United States Board of Parole*, 557 F.2d 100, 106 (7th Cir.1977), where the federal Board had noted in its decision that the

inmate's conduct "involved the detonation of explosives during the bombing of several business establishments."

**3.** Of course a statement as to being "gravely concerned with the loss of human life" cannot, from its very nature, distinguish one murder from every other murder—for by definition *each* murder involves "the loss of human life."

able treatment of some convicted murderers does not give rise to an equal protection claim.

All the same, the apparent contrast between the Board's favorable ruling in Kline's case and its denial of Arnold's like request does highlight the need for a more precise adherence to the demands of *Scott* in this instance.

### Conclusion

It may be that the Illinois Attorney General can muster more persuasive arguments in support of the Board's action than would seem to be available in light of *Scott*'s teaching. If so, this Court is certainly prepared to entertain them. In accordance with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Board is ordered to file in this Court's chambers (and to serve on Arnold), on or before October 23, 1992, an answer to the Petition together with a supporting memorandum of law. This Court will then determine the appropriate next step to be taken in this action.