CHARLES HARRIS, Plaintiff-Appellant, *v.* JAMES IRVING *et al.*, Defendants-Appellees.

Fifth District    No. 80-81

Opinion filed October 14, 1980.

Charles B. Harris, of Vienna, for appellant, *pro se.*

William J. Scott, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Appellant Charles Harris appeals from a judgment of the circuit court of Johnson County denying his "motion for leave to file a complaint for writ of mandamus" and granting appellees' motion for dismissal. On appeal he contends (1) that the trial court erred in denying his motion and (2) that section 3—3—5(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—5(c)(2)) as applied in denying his application for parole violated the *ex post facto* clauses of the United States and Illinois constitutions. We affirm.

Plaintiff was convicted of two counts of murder and arson in 1965, although the record indicates neither the date the crimes were committed nor the sentences received. On April 27, 1979, the Illinois Prisoner Review Board denied plaintiff parole, stating: "[P]arole at this time would deprecate the seriousness of the offenses committed by you * * * or otherwise promote disrespect for the law." Plaintiff filed his motion for leave on September 28, 1979, and defendants, the members of the Illinois Prisoner Review Board, filed their motion to dismiss on January 18, 1980. On February 1, 1980, the circuit court denied plaintiff's motion and granted defendants' motion. It is from this judgment that plaintiff appeals.

Whether or not this is a proper case for *mandamus* relief is irrelevant because we find the underlying case to be without merit. Appellant contends that section 3—3—5(c)(2) of the Unified Code of Corrections, effective November 14, 1973, established a new but more strict consideration by which the Illinois Parole and Pardon Board (now the Illinois Prisoner Review Board) could grant or deny parole. Appellant's argument continues that since this particular consideration was not in force in 1965 when he was convicted, application of it on April 27, 1979, to deny him parole constituted the retroactive application of a punitive measure in violation of the *ex post facto* clauses of the Illinois and United States constitutions. He asks for reconsideration of his parole application under the 1965 standards. (See *People v. Harper* (1975), 27 Ill. App. 3d 406, 327 N.E.2d 91 (abstract).) We disagree.

When appellant was convicted in 1965, the General Assembly imposed on the Parole and Pardon Board the following duty:

> "In consideration of any application for parole due consideration and weight shall be given to the record of the prisoner's conduct kept by the superintendent or warden." (Ill. Rev. Stat. 1965, chs. 108 & 127, pars. 206 & 55b (respectively).)

In addition, the legislature empowered the Board to "make regulations not inconsistent with law governing the issuance, supervision and revocation of parole * * *." (Ill. Rev. Stat. 1965, ch. 38, par. 123—1.) One such rule promulgated by the Board read as follows:

> "12. If the members of the Parole and Pardon Board in conference determine that a prisoner serving an indeterminate term is entitled to parole, they shall enter an order for parole. If they determine that a prisoner is not a fit person to serve his sentence outside the penitentiary, a parole shall be denied, and such further order entered as in the judgment of the members is deemed warranted." Department of Public Safety, Parole and Pardon Board, Rules and Statutes Relating to Parole and Pardons 22 (1962).)

Appellant argues that these statutory guidelines directed the Parole and Pardon Board to consider only the parole applicant's conduct while confined in prison. He further suggests that Rule 12 of the rules of the Parole and Pardon Board likewise focused on the applicant's prison conduct by addressing the determination of whether "a prisoner is not a fit person to serve his sentence outside the penitentiary * * *." Thus, appellant contends that the statutes and rules in force at the time he was convicted were directed solely to special deterrence, or consideration of the rehabilitation of the offender and the likelihood that he would not commit future crimes. *Shepard v. Taylor* (2d Cir. 1977), 556 F.2d 648, 653; *Duldulao v. United States Parole Com.* (S.D. Fla. 1978), 461 F. Supp. 1138, 1142.

In 1973, however, the following statute became effective:

> "(c) The Board shall not parole a person eligible for parole if it determines that:
>
> (1) there is a substantial risk that he will not conform to reasonable conditions of parole; or
>
> (2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or
>
> (3) his release would have a substantially adverse effect on institutional discipline." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—5(c).)

Moreover, pursuant to its rule-making authority, the Illinois Prisoner Review Board adopted the following rule, effective December 31, 1978:

"In accordance with statute, the Board shall not parole a candidate if it determines that:
* * *

B. Release of the candidate would deprecate the seriousness of the offense or promote disrespect for the law, based on one or more of the following factors:
1. The offense is one of murder * * *." (Rules of the Prisoner Review Board, 3 Ill. Reg. 153-54 (1979).)

The 1965 statutes (Ill. Rev. Stat. 1965, chs. 108 & 127, pars. 206 & 55b (respectively)) were repealed in 1973 by section 8—5—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1008—5—1). Appellant contends that by adopting section 3—3—5(c)(2) of the Unified Code of Corrections, the legislature added a consideration of general deterrence which made it more difficult to obtain parole, thereby increasing the punishment for his crime. General deterrence is "[t]he theory of punishing one individual to deter other would-be offenders * * *." (*People v. Knowles* (1979), 70 Ill. App. 3d 30, 33, 388 N.E.2d 261.) Since the Board's order denying parole for appellant read as follows: "The Board still feels that parole at this time would deprecate the seriousness of the offenses committed by you, which include two counts of murder, or otherwise promote disrespect for the law," appellant argues that he was denied parole on the added basis of the general deterrence consideration in violation of the *ex post facto* prohibitions.

■■■ It is well settled that the *ex post facto* clauses (U.S. Const., art. I, §10, cl. 1; Ill. Const. 1970, art. I, §16) apply only to criminal legislation which operates retrospectively to the disadvantage of the party affected or which alters any substantial right of the accused to his detriment. (*Dobbert v. Florida* (1977), 432 U.S. 282, 292-93, 53 L. Ed. 2d 344, 97 S. Ct. 2290; *Calder v. Bull* (1798), 3 U.S. (Dall.) 386, 390, 1 L. Ed. 648, 650.) The pivotal question under *ex post facto* is whether a new statute imposes a greater punishment than that prescribed when the criminal act was committed.[1] (*Dobbert v. Florida; Beazell v. Ohio* (1925), 269 U.S. 167, 169-70, 70 L. Ed. 216, 217-18, 46 S. Ct. 68; *Calder v. Bull; People v. Harris* (1979), 69 Ill. App. 3d 118, 124, 387 N.E.2d 33; *People v. Bowling* (1976), 43 Ill. App. 3d 932, 933, 357 N.E.2d 724.) The United States Constitution looks to the standard of punishment prescribed by a statute

---

[1] As indicated, the record fails to reflect the dates on which the crimes were committed by appellant, the proper point of reference in an *ex post facto* case. The parties discuss the year appellant was convicted and continually refer to 1965 as the pivotal time frame. We assume, therefore, that the crimes at issue here were committed in 1965. However, even if this assumption is incorrect, and the crimes were committed earlier, special deterrence statutes were still operative. Ill. Rev. Stat. 1965, ch. 108, par. 206 appeared at Ill. Rev. Stat. 1963, ch. 38, par. 808a, and Ill. Rev. Stat. 1965, ch. 127, par. 55b held the same location in the Illinois Revised Statutes of 1963.

rather than to the sentence actually imposed (*Lindsey v. Washington* (1937), 301 U.S. 397, 400-01, 81 L. Ed. 1182, 1185-86, 57 S. Ct. 797, 798-99), while the focus of the State Constitution is directed more toward the actual punishment imposed. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 559, 400 N.E.2d 436; *People v. Wyckoff* (1969), 106 Ill. App. 2d 360, 364-65, 245 N.E.2d 316.) We must first determine the nature of appellant's parole interest and then decide whether his punishment has been increased or his rights affected to his detriment.

Appellant concedes, as he must, that he has no constitutional right to parole. Although the United States Supreme Court has not yet spoken to the issue of whether more burdensome parole guidelines violate the *ex post facto* clause of the Federal Constitution (*United States Parole Com. v. Geraghty* (1980), 445 U.S. 388, 390 n.1, 409, 63 L. Ed. 2d 479, 486 n.1, 498, 100 S. Ct. 1202, 1205 n.1, 1215; *United States v. Addonizio* (1979), 442 U.S. 178, 184, 60 L. Ed. 2d 805, 810-11, 99 S. Ct. 2235, 2239-40), we find some of the dicta in *Greenholtz v. Inmates* (1979), 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100, a parole case involving due process considerations, beneficial to our analysis here. In that case it was clearly said:

> "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.' Meachum v. Fano, 427 US 215, 224, 49 L Ed 2d 451, 96 S Ct 2532 (1976).
>
> \* \* \*
>
> That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. [Citation.]" (442 U.S. 1, 7-11, 60 L. Ed. 2d 668, 675-77, 99 S. Ct. 2100, 2104-05.)

When discussing the difficult choices surrounding the decision to grant parole, the Supreme Court stated:

> "A state may \* \* \* establish a parole system, but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. Indeed, the very institution of parole is still in an experimental stage. In parole releases, like its siblings probation release and institutional rehabilitation, few certainties exist. In

each case, the decision differs from the traditional mold of judicial decision-making in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice. The entire inquiry is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." 442 U.S. 1, 7-8, 60 L. Ed. 2d 668, 675-76, 99 S. Ct. 2100, 2104.

■■ That a State has no duty to establish a parole system is well-established in Illinois. In the landmark case of *People ex rel. Kubala v. Kinney* (1962), 25 Ill. 2d 491, 185 N.E.2d 337, the supreme court recognized "that the Parole Act had nothing to do with the sentence imposed by the court, that parole is a matter of clemency and grace and that it relates to prison government and discipline." (25 Ill. 2d 491, 493-94.) Therefore, the court held:

"[W]hile the legislature has taken into account the nature and length of sentence imposed in determining when a prisoner shall become eligible for parole, the determination is, nonetheless, a legislative function relating to prison government and discipline and is not a part of the judicial sentence; and, since parole is an act of clemency and grace, the legislature may change the terms and conditions for parole and make such change immediately applicable to those sentenced prior, as well as, subsequent to the date of the change." (25 Ill. 2d 491, 494.)

Accordingly, it is clear that "[p]arole is a part of the legislative function of establishing a penological system and providing rules to govern the care and discipline of inmates. Parole does not end or in any way affect the prisoner's sentence but is a correctional device authorizing the service of the sentence outside the penitentiary." *People ex rel. Abner v. Kinney* (1964), 30 Ill. 2d 201, 205, 195 N.E.2d 651; see also *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 33 L. Ed. 2d 484, 493-94, 92 S. Ct. 2593, 2606-07.

■■ Thus the standards for the determination of release may be promulgated by the parole board and made applicable to those sentenced before and after their institution.

"[W]hile it is mandatory for the Board to hear the application of one eligible for parole [citation], as it has done in this case, this does not mean that parole is mandatory because the eligibility requirements are met. 'An indeterminate sentence is for the full term fixed by law for the crime' [citation], and inasmuch as parole

is a matter of grace and executive clemency rather than a legal right, a prisoner cannot invoke it at his will and has no right to demand that he be discharged before the expiration of the maximum term of his sentence. [Citation.] It follows that the action of the Board in the instant case did not extend the petitioner's sentences, * * *." (*People ex rel. Jones v. Brantley* (1970), 45 Ill. 2d 335, 337-38, 259 N.E.2d 33.)

Therefore, it is clear that parole in Illinois is in the nature of a gift and as such, its conditions can be changed at the discretion of the legislature. The Prisoner Review Board, by virtue of its grant of authority from the General Assembly, neither increased appellant's punishment or sentence nor denigrated any of his rights when it denied him parole. Its reliance on section 3—3—5(c)(2) of the Unified Code of Corrections was proper, and that statute does not, therefore, constitute an *ex post facto* law.

■■■ Such reliance on that one general deterrence factor is permissible, since the statute employs the disjunctive "or" and allows parole to be denied on any one of the three listed criteria. (*People v. Vraniak* (1955), 5 Ill. 2d 384, 389-90, 125 N.E.2d 513, *cert. denied* (1955), 349 U.S. 963, 99 L. Ed. 1285, 75 S. Ct. 895.) Contrary to appellant's assertion, the Board did not bootstrap to a denial of parole based on general deterrence by adopting its rule that no parole will be granted if release would deprecate the seriousness of the offense or promote disrespect for the law because the crime was murder. The rule does not mandate denial of parole in every murder case. It merely gives the Board the discretion to deny parole if it concludes that the severity of the crime would be derogated or disrespect for the law fostered because, among other things, the offense involved was murder. Hence, appellant has not been denied his right to eligibility for parole. (*People ex rel. Abner v. Kinney* (1964), 30 Ill. 2d 201, 206; *People ex rel. Jones v. Brantley* (1970), 45 Ill. 2d 335, 337.) He has simply been denied release on parole which he has no right to even though he is eligible. *People v. Hawkins* (1973), 54 Ill. 2d 247, 252, 296 N.E.2d 725.

Appellant also contends that the cases of *Rodriguez v. United States Parole Com.* (7th Cir. 1979), 594 F.2d 170, and *Geraghty v. United States Parole Com.* (3d Cir. 1978), 579 F.2d 238, mandate a finding that the rules of the Prisoner Review Board and section 3—3—5(c)(2) of the Unified Code of Corrections worked to his substantial disadvantage and were applied retroactively in violation of the *ex post facto* clause of the Federal Constitution. However, much of the *Geraghty* decision was *dicta* and the case was decided on summary judgment grounds. Subsequently, the United States Supreme Court vacated the judgment of the Third Circuit Court of Appeals and remanded the case for further proceedings. (*United States Parole Com. v. Geraghty* (1980), 445 U.S. 388, 63 L. Ed. 2d

479, 100 S. Ct. 1202.) Thus, that case is still in controversy. Moreover, the *Rodriguez* and *Geraghty* cases had to do with eligibility for parole, which is not the issue here. Finally, contrary to Illinois law, the Federal statute in question there considers parole to be part and parcel of the sentence annexed to the crime and punishment of the defendant. (See *Ruip v. United States* (6th Cir. 1977), 555 F.2d 1331, 1335.) Therefore, these cases are inapposite here.

Appellant further contends that certain statutory provisions forbid the retroactive application of the general deterrence criterion in a case such as his. Although the 1965 special deterrence statutes were repealed by the Unified Code of Corrections, the saving clause thereof, section 8—2—1, states as follows:

> "The repeal of Acts or parts of Acts enumerated in Section 8—5—1 does not: (1) affect any offense committed, act done, prosecution pending, penalty, punishment or forfeiture incurred, or rights, powers or remedies accrued under any law in effect immediately prior to the effective date of this Code * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—1.)

However, it has been noted above that parole in Illinois is not part of the sentence or punishment annexed to the crime, and is not a right possessed by a convicted defendant. Therefore, this statute, as well as the general saving statute employing virtually the same language (Ill. Rev. Stat. 1979, ch. 1, par. 1103), does not preclude the application of section 3—3—5(c)(2) of the Unified Code of Corrections to appellant.

Likewise, section 3—3—3(c) of the Unified Code of Corrections does not benefit appellant. That section provides:

> "Any person in the custody of the Department of Corrections on the date this Section becomes operative who, under prior law, would have been eligible for parole sooner than provided in this Section, shall have his parole eligibility determined under such prior law; otherwise his eligibility shall be determined under this Article and Article 8 of Chapter V." (Ill. Rev. Stat. 1977, ch. 38, par. 1003—3—3(c).)

Again, parole eligibility is not at issue here, but the Prisoner Review Board's discretionary denial of parole once appellant was eligible.

■■ For the foregoing reasons, we conclude that section 3—3—5(c)(2) of the Unified Code of Corrections does not operate retroactively in violation of the *ex post facto* clauses of the State and Federal constitutions. Finding appellant's remaining points to be without merit, we affirm the judgment of the circuit court of Johnson County.

Affirmed.

KARNS and KASSERMAN, JJ., concur.