**UNITED STATES of America, ex rel. Leon JOHNSON, Petitioner,**

**v.**

**Kenneth McGINNIS, Warden, et al., Respondents.**

**No. 83 C 1362.**

United States District Court, N.D. Illinois, E.D.

Aug. 31, 1983.

On Attorney General's Report to the Court Oct. 5, 1983.

Leon Johnson, pro se; Stephen P. Carponelli and Gregory A. Adamski, Carponelli & Krug, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen. of Ill., Marcia Friedl, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Leon Johnson ("Johnson") petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 ("Section 2254"), asserting the Illinois Prisoner Review Board ("Board") deprived him of due process by providing an inadequate statement of its rationale when it denied him parole in November 1982 (the

"November Rationale"). Respondents and Johnson then filed cross-motions for summary judgment.[1]

After respondents had filed a brief supporting their motion, in May 1983 Board conducted another hearing (the "May hearing") and again denied Johnson parole. In their closing briefs Johnson and respondents also argued the constitutional adequacy of Board's May 1983 statement of its rationale (the "May Rationale"), each side effectively moving for summary judgment on Johnson's habeas claims as amended and applied to Board's May actions. For the reasons stated in this memorandum opinion and order:

1. This Court defers ruling on the cross-motions for summary judgment.

2. Illinois' Attorney General is ordered to report at the next status hearing what action his clients have taken in conformity with the legal position he has asserted before this Court.

### Facts

Johnson is an inmate at Pontiac Correctional Center. In May 1971 he was convicted of two 1969 murders and sentenced to 40 to 100 years imprisonment. This Court has been provided no information as to Johnson's direct appeals, if any, and the Petition does not attack Johnson's conviction.

Board denied Johnson parole November 17, 1982, following his fourth annual parole review. Board's official preprinted report form consists of various boxes to be checked so as to indicate the decision and supporting rationale. In November 1982 Board checked only the box indicating "Parole denied, continued to *7/83*" (the date being hand-written onto a blank line) (see this

---

1. Johnson filed his pro se petition (the "Petition") March 2, 1983 after this Court's former colleague Judge Joel Flaum had granted him leave to file and proceed in forma pauperis. Johnson also filed pro se memoranda June 2 and 27, opposing respondents' motion for summary judgment and supporting his cross-motion. Johnson's pro se filings, prepared with the assistance of two fellow prisoners (designating themselves "jail-house lawyers"), would do credit to some licensed attorneys.

After Johnson's Petition was reassigned to this Court's calendar, it appointed Stephen P. Carponelli, Esq. to represent Johnson under this District Court's Federal Trial Bar pro bono representation program. Mr. Carponelli and a partner, Gregory A. Adamski, Esq. then submitted a helpful July 21 memorandum on the exhaustion issue posed here. This Court expresses its gratitude to Messrs. Carponelli and Adamski for their efforts in Johnson's behalf.

opinion's Appendix I). But it appended a separate sheet stating its November Rationale:

The Prisoner Review Board has considered all factual information related to your case including your institutional adjustment and current assignment, your release plan, information from the Cook County State's Attorney [sic] office, as well as your presentation during your rehearing. Accordingly, the record states that after a finding of guilty for the crime of murder, you were sentenced to 40–100 years in prison.

The facts in the indictment state that the murders were gang related, the victim's ages being 17 and 14. According to the official Statement of Facts, the defendants marched the victims to an alley abutting a railroad embankment where they met with their gang Chief who told them to leave the victim alone. Defendants disregarded their Gang Chief's advise [sic]; and executed Reynolds who was standing against the railroad embankment with his hands in his pocket. His body was found with a shotgun wound in the side and three pistol wounds to the head. Defendants then turned to Johnnie Wilson and executed him.

The Supplemental Program Considerations Report dated October 29, 1982, indicate [sic] you have been assigned to the laundry building since July 1, 1982. Since your last appearance before the Prisoner Review Board, you have received one disciplinary report resulting in restriction of gym privileges for one month.

During your hearing, it was noted that you plan to enroll in a tailoring program with the Tailor's Institute of Chicago and reside with your mother in Chicago.

Johnson initially argued (Petition 4a) Board's November Rationale "does not com-

port with the due process requirements" stated by our Court of Appeals in *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1190–91 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982) and *Welsh v. Mizell,* 668 F.2d 328, 330–32 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). In sum Johnson said (Petition 9) the November Rationale "sheds [no] light on why [Board's] conclusion was reached." Though the November Rationale did recite the facts of Johnson's offenses, Johnson argued (*id.,* emphasis in original) "unless [Board] denies parole to *all* prisoners similarly situated as the petitioner, its reasons in this case to deny parole is [sic] tantamount to no reason at all."[2] Johnson sought (*id.* at 11) a new Board hearing and a constitutionally adequate statement of reasons should Board again deny him parole.

Johnson (June 27 Mem. 1–2) and respondents (Aug. 1 Mem. 2 and Ex. A) informed this Court Johnson *was* again considered for parole May 18, 1983.[3] On its official May 19 report as to that hearing Board checked only the box indicating "Parole denied, continued to *5/84*" (the date again being handwritten onto a blank line). But also handwritten on the form are the words "Rationale to follow" (see this opinion's Appendix II), and appended is a separate sheet stating the May rationale:

The Prisoner Review Board panel, in addition to conducting a face-to-face interview with Mr. Johnson, carefully reviewed all the materials in his file including, but not limited to, the official statement of fact, institutional adjustment, and parole plans.

Mr. Johnson is serving a 40–100 years sentence for the murder of two young men aged 14 and 17. According to the official statement of facts, both victims

---

**2.** That argument closely tracks the language in *Scott,* 669 F.2d at 1191. But cf. the *Scott* discussion (*id.* at 1190–91 & n. 8) of *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976).

**3.** Board had continued Johnson's case to *July* 1983 when it denied parole in November 1982. Johnson rightfully makes some hay (June 27 Mem. 2) from the fact Board accelerated his rehearing after his Petition was filed.

were executed in an alley, one by pistol wounds to the head and a shotgun wound in the side, and the other by pistol wounds.

Parole plans were noted by the Panel. Mr. Johnson has received no disciplinary reports since his last appearance before the Board in November, 1982. He has recently been assigned to the Officers' Kitchen.

The Prisoner Review Board panel decides that further incarceration is needed to insure Mr. Johnson's continuing institutional stability and to therefore enhance the likelihood of his conforming to parole conditions and non-violent behavior in the free community. Parole is denied and case continued to May, 1984.

Johnson argues (June 27 Mem. 2–4) (1) the May Rationale is also defective under *Scott* and (2) really amounts to a denial of parole solely on the basis of the facts—and hence the seriousness—of his offenses. *Welsh,* 668 F.2d at 330–31 teaches the Ex Post Facto Clause would bar using the seriousness of Johnson's 1969 offenses as *the* determinative factor in Johnson's parole denial, for citation of that factor derives from Illinois parole criteria enacted in 1973. Respondents retort (Aug. 1 Mem. 2) the May Rationale passes muster under *Scott* and *Welsh* even if the November Rationale did not.

### Exhaustion of Available State Remedies

As a threshold matter the parties argue extensively whether Johnson has exhausted his state court remedies as to his due process claim,[4] as Section 2254 requires. *Rose v. Lundy,* 455 U.S. 509, 515–20, 102 S.Ct. 1198, 1201–04, 71 L.Ed.2d 379 (1982). Johnson argues (1) Illinois courts would not entertain his due process claim and (2) in any event pursuit of state remedies would be futile. Petition 5; June 2 Mem. 2–3; July 21 Mem. 4–12. Respondents contend John-

son can pursue that claim in Illinois courts via mandamus proceedings. May 4 Mem. 2–4; May 9 Supp.Mem. and Ex. A; June 10 Mem. 1–2; Aug. 1 Mem. 1–2.

One thing is clear: Our Court of Appeals specifically held in *Welsh,* 668 F.2d at 329–30, it would have been futile to seek an Illinois state court remedy on the ex post facto claim urged by the petitioner there. For that proposition the Court cited *Harris v. Irving,* 90 Ill.App.3d 56, 45 Ill.Dec. 394, 412 N.E.2d 976 (5th Dist.1980), in which (1) the Illinois Appellate Court had rejected that claim as to application of Illinois' 1973 parole criteria to pre-1973 offenses and (2) the Illinois Supreme Court had denied leave to appeal. Thus, as to Johnson's ex post facto claim, there are clearly no available state court remedies (as respondents admit, see n. 4).

As for Johnson's due process claim, Board can point to no possible "available" remedy other than a petition for writ of mandamus. There is an inherent anomaly in Board's advancement of its exhaustion-of-remedies argument to embrace that remedy in the present circumstances. Under Illinois law:

1. Mandamus is an extraordinary remedy. *People ex rel. Hoagland v. Streeper,* 12 Ill.2d 204, 218, 145 N.E.2d 625, 632 (1957); *People ex rel. Cantu v. School Directors,* 58 Ill.App.2d 282, 287–89, 208 N.E.2d 301, 304–05 (1st Dist.1965). It is available only to those who have established the clearest of rights to a public official's performance of an unquestioned duty (and not simply a claimed erroneous exercise of the official's discretion). *People ex rel. Heydenreich v. Lyons,* 374 Ill. 557, 567–68, 30 N.E.2d 46, 52 (1940).

2. Only the Illinois Attorney General, who is properly serving as Board's counsel before this Court, may represent Illi-

---

4. Johnson's Petition at 7 disclaimed an ex post facto argument, in keeping with his contention (*id.* at 9–10) the November Rationale really stated *no* reason for his parole denial. Respondents sensed an ex post facto claim anyway but conceded *that* claim was exhausted (May 4

Mem. 2–3). As described above Johnson later explicitly raised an ex post facto claim as to the May Rationale (June 27 Mem. 2–4), so respondents' concession on that claim's exhaustion did not go for naught.

nois public officials such as Board. *People ex rel. Scott v. Briceland,* 65 Ill.2d 485, 492–500, 3 Ill.Dec. 739, 744–45, 359 N.E.2d 149, 154–56 (1976).

Yet Board comes to this Court, stating through the Attorney General that state mandamus *will* lie (that is, that Johnson has the clearest of rights to the relief he seeks [5]), but still having deprived him of that clear and unquestioned right—not once but twice! If Board and the Attorney General are correct, Johnson's state court petition for writ of mandamus would be a feigned proceeding, with petitioner and respondents in total agreement and with no case or controversy thus before the state court. It would be the legal duty of the Attorney General to confess error and require his clients to act immediately to give Johnson his due process rights. *See Marino v. Ragen,* 332 U.S. 561, 562, 68 S.Ct. 240, 241, 92 L.Ed. 170 (1947) (per curiam).

All this induces a powerful sense of deja vu—of "plus ca change, plus c'est la meme chose." There was a time when Illinois was a byword for the frustration of prisoners' rights—when it had constructed a maze of procedural obstacles to post-conviction hearings, with nothing except a blind alley at the end of each path. Whatever avenue a prisoner sought to take, he was told he had pursued the wrong remedy and must try another route. See Note, *A Study of the Illinois Supreme Court,* 15 U.Chi.L.Rev. 107, 118–31 (1947) (written by this Court as a law student); Katz, *An Open Letter to the Attorney General,* 15 U.Chi.L.Rev. 251 (1948). In *Marino,* 332 U.S. at 562, 68 S.Ct. at 241 it was the Illinois' Attorney General's confession of error and the Supreme Court's response (see particularly Justice Rutledge's blistering concurrence, *id.* at 563–70, 68 S.Ct. at 241–45) [6] that finally broke the log jam. Indeed the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, §§ 122–1 to 122–7, was a direct outgrowth of that shameful chapter in the State's history.

This case does not present the normal exhaustion-of-remedies situation, in which considerations of "Our Federalism" and comity require that state courts be given the first opportunity to consider whether under the facts the Constitution—which the state courts are equally bound to uphold—does or does not guarantee the right a prisoner seeks to invoke. *See United States ex rel. Mitchell v. DeRobertis,* 553 F.Supp. 93, 96 (N.D.Ill.1982). Instead the very availability of the mandamus remedy urged by the Board necessarily implies (or more accurately *guarantees* as a matter of law) Johnson's absolute and unquestioned right to relief.

It cannot be that the State's highest law officer, charged with the duty to represent the People in the classic sense, would take a different stance before a state tribunal (asserting the nonexistence of a clear right to relief and hence the unavailability of mandamus). Were such a possibility to exist,[7] the teaching of *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408–09, 30 L.Ed.2d 418 (1971) is that there would be no "available" state remedy required to be exhausted (citations omitted):

> Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus. The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.... Petitioners are not required to file "repetitious appli-

---

5. If successful here, Johnson will be entitled to a Board determination providing a constitutionally adequate statement of its rationale for denial of his parole. As n. 2 reflects, Johnson's claims are complex, and no holding on the merits is suggested in this opinion.

6. All of us have some events in our professional careers in which we take special pride. As a different kind of "confession of error" (for we are taught pride is a sin), this Court's great good fortune in having its law review note cited and quoted in *Marino* (*id.* at 562, 568 n. 7, 569 n. 11, 68 S.Ct. at 241, 244 n. 7, 245 n. 11) while still in law school represented just such an event.

7. It should be remembered there is no *Illinois* case that holds mandamus available to a prisoner in Johnson's position.

cations" in the state courts.... Nor does the mere possibility of success in additional proceedings bar federal relief.... Whether the State would have heard petitioners' claims in any of the suggested alternative proceedings is a matter of conjecture; certainly no available procedure was indicated by the State Supreme Court in earlier cases.... Furthermore, we are not referred to a single instance, regardless of the remedy invoked, in which the Missouri courts have granted a hearing to state prisoners on the conditions of their confinement. In these circumstances § 2254 did not require petitioners to pursue the suggested alternatives as a prerequisite to taking their claims to federal court. As Mr. Justice Rutledge stated in his concurrence in *Marino v. Ragen,* 332 U.S. 561, 568 [68 S.Ct. 240, 244, 92 L.Ed. 170] (1947):

> "The exhaustion-of-state-remedies rule should not be stretched to the absurdity of requiring the exhaustion of ... separate remedies when at the outset a petitioner cannot intelligently select the proper way, and in conclusion he may find only that none of the [alternatives] is appropriate or effective."

As already said, the necessary corollary of the Attorney General's position is that he will direct his clients (respondents here) to provide Johnson the relief he seeks in this Court. "Availability" of the mandamus remedy in the present context, unlike the "availability" of some other procedures, is not simply the "right" to *file* a mandamus action. Because of the inherent nature of mandamus, it is "available" to Johnson only if he has the true "right"—the right to relief—and not merely the opportunity to present a piece of paper to a court.[8]

In sum the Attorney General's insistence Johnson has a mandamus remedy has to mean Johnson (1) is correct on the merits and (2) has an unquestioned right to a parole rehearing and a constitutionally adequate rationale for Board's actions. It may be the Attorney General has not thought through the inexorable significance of his own arguments. It may even be (though this Court would be loath to make such an assumption) his argument about "availability" of mandamus is not one of real availability, but rather a reprise of the kind of lip-service "availability" (but real-world unavailability) that ultimately led to Illinois' discredit in *Marino.* This Court prefers to take the Attorney General at his word. In those terms the Attorney General necessarily admits Johnson has an unquestioned right to the relief he now seeks, and the Attorney General has a consequent duty to instruct Board accordingly.

This Court therefore defers ruling on the pending motions for summary judgment. This matter is set for a status report September 21, 1983 at 9 a.m., at which time the Attorney General is ordered to report to this Court on whether Board has granted (or has made arrangements to grant) Johnson a hearing in compliance with *Scott* and *Welsh.*

## APPENDIX I

Name Leon Johnson No. C–I5276 , Pontiac Dkt. No. EF

### STATE OF ILLINOIS
### PRISONER REVIEW BOARD Date May 17, 1983

To the Warden—
The following order is your authority to release this individual on parole to the custody and supervision of the Office of Community Supervision, or continue to hold as indicated. If parole is ordered, said order is subject to being vacated prior to release to parole.

8. This Court had prepared a discursive analysis of the cases cited by the Attorney General for the proposition mandamus is an "available" remedy (in the same sense our Court of Appeals applies to exhaustion of remedies in the closely related area of post-conviction proceedings; *see Gray v. Greer,* 707 F.2d 965, 967–69 (7th Cir.1983); *Perry v. Fairman,* 702 F.2d 119, 120–23 (7th Cir.1983)). But at least for the moment this Court can properly forego that discussion, pending the consequences of the Attorney General's inherent concession as to Johnson's rights. It should be understood this Court is *not* holding mandamus is in fact a remedy "available" to Johnson in the habeas sense of unexhausted remedies. Instead it simply defers that question until the Attorney General reports back in accordance with this opinion.

Any release is contingent upon execution of Parole or Mandatory Supervised Release Agreement.

☐ Parole granted effective when

☐ Parole plans are approved
☐ Minimum is served
☐ Eligible

☐ Subject to regular conditions and

☐ Close Supervision
☐ Special Condition No. _____
☐ Recommendation No. _____

☐ Parole denied, continued to _____7/83_____
☐ Hearing continued to _____

☐ Psychiatric report, requested
☐ For verification of parole plans
☐ At inmate's request

☐ Release date offer addended to this Order

☐ Declared a violator as of
_____ on

☐ Statutory Parole
☐ Mandatory Supervised Release
☐ Parole

☐ Parole or release revoked

☐ Continued to _____
_____

☐ Parole or release continued

☐ Effective _____
_____

☐ Effective when plans are approved

☐ Found not to be a violator
☐ Hearing continued to _____

☐ For further information
☐ At inmate's request
☐ For Violation Report
☐ Recommendation No. _____
☐ Special Condition No. _____

☐ Order of _____
☐ Amended
☐ Stayed
☐ Vacated

☐ Warrant withheld
☐ Warrant withdrawal request
☐ Granted
☐ Denied

The Board, considering all factors in your case, is denying parole at this time because of one or more of the following statutory reasons:

☐ There is a substantial risk that you will not conform to the reasonable conditions of parole, based upon one or more of the following reasons:

☐ Existence of prior adult felony convictions.
☐ An apparent pattern of aggressive or assaultive behavior (misdemeanor offenses also considered).
☐ Prior adult parole or probation violations within five years prior to offense.
☐ Refusal to be supervised on parole.
☐ Inadequate parole plan.

☐ Your release would deprecate the seriousness of the offense or promote disrespect for the law, based upon one or more of the following factors:

☐ The offense for which you were convicted,
_____

☐ The aggravating as well as mitigating circumstance as described by statute.

☐ Your release would have a substantially adverse effect on institutional discipline based upon one or more of the following factors as established by the finding of an Administrative Review Board.

☐ Physical attack on another inmate or in-institutional staff.
☐ Possession of weapons, or drugs.
☐ Repeated violations of major institutional rules.
☐ Committed an act prohibited by law.

**Violator Rationale**

Parole or release is violated because you:

☐ Were convicted of (charged with) _____
_____

☐ Violated condition(s) _____

of your Parole or Release Agreement

☐ Violated condition(s) _____

of your Special Order

☐ Absconded
☐ Possessed ☐ Delivered
☐ A controlled substance
☐ A weapon

☐ Did not comply with your counselor's instructions to _____

☐ Failed to report or falsified report(s)

 ☐ Testimony or reports of witnesses

 ☐ Own admission

**Evidence Relied Upon**

☐ See Addendum attached to and made a part of this Order

☐ Counselor's Report

☐ Police Report

For The Board

# APPENDIX II

Name Leon Johnson * No. C–I5276 Inst. Pontiac Dkt. No. DC

### STATE OF ILLINOIS
## PRISONER REVIEW BOARD

Date May 18, 1983

To the Warden—

The following order is your authority to release this individual on parole to the custody and supervision of the Office of Community Supervision, or continue to hold as indicated. If parole is ordered, said order is subject to being vacated prior to release to parole. Any release is contingent upon execution of Parole or Mandatory Supervised Release Agreement.

☐ Parole granted effective when

 ☐ Parole plans are approved

 ☐ Minimum is served

 ☐ Eligible

☐ Subject to regular conditions and

 ☐ Close Supervision

 ☐ Special Condition No. _____

 ☐ Recommendation No. _____

☒ Parole denied, continued to 5/84

☐ Hearing continued to _____

 ☐ Psychiatric Report requested

 ☐ For verification of parole plans

 ☐ At inmate's request

☐ Release date offer addended to this Order

☐ Declared a violator as of

_____ on

 ☐ Statutory Parole

 ☐ Mandatory Supervised Release

 ☐ Parole

☐ Parole or release revoked

 ☐ Continued to _____

☐ Parole or release continued

 ☐ Effective _____

 ☐ Effective when plans are approved

☐ Found not to be a violator

☐ Hearing continued to _____

 ☐ For further information

 ☐ At inmate's request

 ☐ For Violation Report

 ☐ Recommendation No. _____

 ☐ Special Condition No. _____

☐ Order of _____

 ☐ Amended

 ☐ Stayed

 ☐ Vacated

☐ Warrant withheld

☐ Warrant withdrawal request

 ☐ Granted

 ☐ Denied

☐ Statutory Parole

☐ Release by statute

☐ Considering all factors of your case, it is the judgment of the Board that parole is warranted.

☐ See Addendum attached to and made a part of this Order

PDB–140–A

White: Board

Canary: Inst. File

Rationale to follow

Pink: Resident

Goldenrod: Clinical or Parole Services

The Board, considering all factors in your case, is denying parole at this time because of one or more of the following statutory reasons:

☐ There is a substantial risk that you will not conform to the reasonable conditions or parole, based upon one or more of the following reasons:

 ☐ Existence of prior adult felony convictions.

 ☐ An apparent pattern of aggressive or assaultive behavior (misdemeanor offenses also considered).

 ☐ Prior adult parole or probation violations within five years prior to offense.

 ☐ Refusal to be supervised on parole.

 ☐ Inadequate parole plan.

☐ Your release would deprecate the seriousness of the offense or promote disrespect for the law, based upon one or more of the following factors:

 ☐ The offense for which you were convicted.

 ☐ The aggravating as well as mitigating circumstance as described by statute.

☐ Your release would have a substantially adverse effect on institutional discipline based upon one or more of the following factors as established by the finding of an Administrative Review Board.

 ☐ Physical attack on another inmate or institutional staff.

 ☐ Possession of weapons or drugs.

 ☐ Repeated violations of major institutional rules.

 ☐ Committed an act prohibited by law.

**Violator Rationale**

Parole or release is violated because you:

☐ Were convicted of (charged with) _____

☐ Violated condition(s) _____

of your Parole or Release Agreement

☐ Violated condition(s) _____

of your Special Order

☐ Absconded

☐ Possessed ☐ Delivered

 ☐ A controlled substance

 ☐ A weapon

☐ Did not comply with your counselor's instructions to _____

☐ Failed to report or falsified report(s)

**Evidence Relied Upon**

 ☐ Counselor's Report

 ☐ Police Report

 ☐ Testimony or reports of witnesses

 ☐ Own admission

☐ See Addendum attached to and made a part of this Order

For The Board

 Anne Taylor

 L. Dreaklin

 P. Klincer

## ON ATTORNEY GENERAL'S REPORT TO THE COURT

This Court's August 31, 1983 memorandum opinion and order (the "Opinion", 571 F.Supp. 270) took the Illinois Attorney General at his word in contending mandamus is an available and unexhausted remedy for petitioner Leon Johnson ("Johnson"), thus defeating Johnson's right to federal habeas corpus under 28 U.S.C. § 2254 ("Section 2254"). Defendants were directed to apprise this Court, by the September 21 status call set by the Opinion, whether Johnson would therefore be accorded a new parole hearing.

Now the Attorney General has filed a September 19 "Report to the Court," and he has supplemented that Report with an oral confirmation at the status call, stating Johnson does *not* have a clear right to relief in mandamus. Instead the Attorney General urges Johnson's mere right to file a paper (a petition for writ of mandamus), which would by definition be unsuccessful because Johnson does not have "the clearest of rights to a public official's performance of an unquestioned duty" (Opinion at 273), demonstrates the "availability" of the state remedy of mandamus.

It is unnecessary to repeat the analysis of the Opinion, which views mandamus as qualitatively different from other truly available remedies under the circumstances

here. Obviously the Attorney General's perception of "available" remedies displays less candor than did his predecessor of a generation ago in confessing error in *Marino v. Ragen,* 332 U.S. 561, 562, 68 S.Ct. 240, 241, 92 L.Ed. 170 (1947) (per curiam) (see Opinion at 274–75).[1] Because the Attorney General has thus retreated from the logical consequence of his "availability" argument, this supplemental opinion must proceed with the further analysis referred to in the Opinion at 275 n. 8.

### *Mandamus As An "Available" Remedy*

■ Complex exhaustion problems usually arise when a habeas petitioner has committed a procedural default in state court. Then the question becomes whether Illinois courts will relax their prevailing "waiver" or "forfeiture" rules to allow the petitioner's previously unasserted claim to be advanced in some form of state post-conviction proceeding. *See, e.g., Gray v. Greer,* 707 F.2d 965, 967–69 (7th Cir.1983); *Perry v. Fairman,* 702 F.2d 119, 120–23 (7th Cir. 1983). In that context our Court of Appeals will find a habeas claim unexhausted only if there is "direct precedent" indicating Illinois courts would relax their "waiver" doctrine "under the particular circumstances of a prisoner's case." *Gray,* 707 F.2d at 968; *Perry,* 702 F.2d at 121 (both quoting *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1386 (7th Cir. 1974)).

By analogy, respondents need a "direct precedent" here to show the "availability" of Illinois mandamus proceedings on Johnson's due process claims against Board. On that score respondents have come up short with the citations they adduce in their support:

1. *Toney v. Franzen,* 687 F.2d 1016, 1021 (7th Cir.1982) cites *People ex rel. Abner v. Kinney,* 30 Ill.2d 201, 195 N.E.2d 651 (1964), for the proposition "Under Illinois law, mandamus is clearly the appropriate procedure to compel the Department of Corrections to set petitioner's mandatory release date in accordance with law."

2. *People ex rel. Tucker v. Kotsos,* 68 Ill.2d 88, 99, 11 Ill.Dec. 295, 300, 368 N.E.2d 903, 908 (1977), held "*mandamus* will lie to enforce the accused parole violator's right to a reasonably prompt final revocation hearing."[2]

3. *United States ex rel. Clark v. Klincar,* No. 83 C 695, (N.D.Ill. Mar. 31, 1983) concluded (slip op. at 2) a due process parole-denial claim could still be argued on petitioner's "pending state court appeal." There is no indication whether Judge Getzendanner referred to petitioner's direct appeal or to an appeal in a post-conviction or collateral proceeding. There is in any event no reference to mandamus proceedings.

4. *United States ex rel. Mitchell v. McComb,* No. 82 C 3962 (N.D.Ill. Mar. 7,

---

1. Indeed the Attorney General's position is more reminiscent of his predecessor's efforts that had generated the hopeless procedural labyrinth culminating in *Marino.*

2. Note *Toney, Abner* and *Tucker* dealt with mandamus proceedings to compel officials to perform acts specifically required by state law. Respondents do not cite statutes or regulations that require compliance with the specific due process demands articulated in *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1190–91 (7th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). Ill.Rev.Stat. ch. 38, § 1003–5–1(b) ("Section 1003") is very ambiguous in that regard. It provides in relevant part:

 If the Department or the Prisoner Review Board makes a determination under this

Code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of factual information relied upon by the Department or Board to make the determination, provided that the Department or Board shall not be required to advise a person committed to the Juvenile Division any such information which in the opinion of the Department or Board would be detrimental to his treatment or rehabilitation.

Does Section 1003 require advice to the prisoner of the *facts* relied on or merely of the categories of information surveyed? Judging by the first sentences of the November and May Rationales, Board reads Section 1003 in the latter way.

1983) did deal with claims identical to Johnson's. But in concluding petitioner had an available mandamus remedy Judge Decker (slip op. at 2) relied solely on the inapposite *Toney, Tucker* and *Abner* cases.

Respondents' most "direct precedent" is *United States ex rel. Johnson v. Klincar,* 572 F.Supp. 924, 927 (N.D.Ill.1983).[3] There Judge Roszkowski surveyed *Abner* and other "similar" cases involving mandamus proceedings against state prison officials involving various claims.[4] Although Judge Roszkowski decided petitioner should first test the availability of the state mandamus remedy, he acknowledged (*id.* at 7):

> No Illinois cases have come to this court's attention on the issue of whether mandamus is available to compel the parole board to state the facts upon which it relied in reaching its determination.

Notably also, respondents have not informed this Court how the test recommended in Judge Roszkowski's *Johnson* case has gone.

■ On the other side of the coin, there is also United States District Court authority for Johnson's position here. *See United States ex rel. Hurst v. Harvey,* No. 79 C 1566, slip op. at 2 (N.D.Ill. Mar. 21, 1980) (Grady, J.); *United States ex rel. O'Connor v. MacDonald,* 449 F.Supp. 291, 295 & n. 2 (N.D.Ill.1978) (Leighton, J.). But the current problem cannot be answered by weighing and balancing federal authorities. It must always be remembered that under *Perry* and its progeny federal courts are *not* the creators of state remedies—only the mirrors of those remedies. What is reveal-

ing for this Court is (1) our Court of Appeals teaches the burden is clearly on *respondents* to come forward with "direct precedent" in *Illinois state court law* for their contention as to exhaustion of Johnson's due process claim and (2) respondents have utterly failed to meet that burden.

Thus artificial self-levitation, in the form of counting up *federal* cases, will not do the job. There is no "direct precedent" in the Illinois state cases to meet the *Gray-Perry-Williams* requirement. Consequently mandamus is indeed not an unexhausted and still-available remedy. This Court is free to turn to the merits of Johnson's contention (for which purpose the following discussion takes off where the Opinion ended).

### Merits

Though respondents are wholly unpersuasive in arguing the November Rationale meets the requirements of *Scott,* 669 F.2d at 1191,[5] that is really of no moment. After all, Johnson's only remedy as to his November Rationale due process claim would have been a remand to Board for a rehearing. *Id.; Welsh v. Mizell,* 668 F.2d 328, 332–33 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). So as a technical matter the May hearing mooted Johnson's Petition and the cross summary judgment motions as originally filed.

But as the Opinion at 5 reflects, Johnson now contends (June 27 Mem. 1–4) the May Rationale is also defective. In effect he amends his Petition to apply also to that latter rationale. Johnson asserts both ex post facto and due process claims in an

---

**3.** *Johnson* was relied on by Judge McGarr in *United States ex rel. Barksdale v. Thompson,* No. 83 C 1946 (N.D.Ill. Apr. 14, 1983).

**4.** *United States ex rel. Isaac v. Franzen,* 531 F.Supp. 1086 (N.D.Ill.1982) (revocation of good conduct credits); *Tedder v. Fairman,* 93 Ill. App.3d 948, 49 Ill.Dec. 447, 418 N.E.2d 91 (4th Dist.1981) (medical care for psychological problems, and transfer to protect prisoner from gangs); *Taylor v. Franzen,* 93 Ill.App.3d 758, 48 Ill.Dec. 840, 417 N.E.2d 242, *aff'd on rehearing,* 93 Ill.App.3d 1152, 51 Ill.Dec. 645, 420 N.E.2d 1203 (5th Dist.1981) (revocation of good con-

duct time); *People ex rel. Stringer v. Rowe,* 91 Ill.App.3d 134, 46 Ill.Dec. 582, 414 N.E.2d 466 (3d Dist.1980) (petition for declaratory judgment as to prison disciplinary action).

**5.** Plainly the November Rationale simply does not state any *reason* at all for Johnson's parole denial. Respondents as much as admit that fact, for in effect they have argued a proper statement of reasons is visible if one reads between the lines of the November Rationale. May 4 Mem. 5–6; June 10 Mem. [2].

interrelated argument: He says the May Rationale still cites no *facts* or *reasons* to support its merely conclusory determinations *except* the facts of his crimes, so he is being denied parole solely because of the seriousness of his offenses. According to Johnson the May Rationale flagrantly flouts *Scott* and subtly violates *Welsh*. Respondents just as vigorously assert (Aug. 1 Mem. 2) the May Rationale passes muster under *Scott* and *Welsh*.

Matters are not quite so simple as either Johnson or respondents would have it. *Scott* condemned the use of a generic description of an inmate's offense (*e.g.,* murder) as the only predicate for the denial of parole. But in part of its discussion en route to that decision, the *Scott* court distinguished (669 F.2d at 1191 & n. 8) two earlier decisions in which the United States Board of Parole and the Illinois Prisoner Review Board had described the *specific* facts of the prisoner's offense, and in which the Court of Appeals had found the requirements of due process satisfied. *Garcia v. United States Board of Parole,* 557 F.2d 100 (7th Cir.1977); *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir.1955). And it is certainly true the May Rationale briefly sketches the facts that led to Johnson's conviction:

> Mr. Johnson is serving a 40–100 years sentence for the murder of two young men aged 14 and 17. According to the official statement of facts, both victims were executed in an alley, one by pistol wounds to the head and a shotgun wound in the side, and the other by pistol wounds.

■ Thus we are not faced with a carbon copy of what *Scott* held fatally flawed in due process terms. But the raison d'etre of *Scott* (and *Richerson* ) surely demands more

than the May Rationale gives Johnson. After all there is a *reason* that due process requires the furnishing of reasons to a prisoner. That reason of course is the one *Scott* (669 F.2d at 1191 n. 7) quoted from Chief Justice Burger's opinion for the Court in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 15–16, 99 S.Ct. 2100, 2108, 60 L.Ed.2d 668 (1979):

> The Board communicates the reason for its denial as a guide to the inmate for his future behavior . . . . [W]hen parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more.[6]

■ So it is that *Scott,* 669 F.2d at 1190–91 makes it plain Board is not required to cite all the particular evidence for its stated reasons, but it must state those *reasons* clearly. Board must inform Johnson (*id.* at 1191, emphasis added) "of *what in his record* was felt by the Board to warrant his denial *and why.*" Indeed Board's own preprinted official form confesses there is a point acceptable to it on the continuum between (1) stating *no* reasons and (2) providing full summaries of all the evidence it considered. That form provides check-boxes by which to indicate the specific facts supporting Board's citation of the statutory criteria for parole denial. Those boxes invite Board to give Johnson precisely the "essential facts" he seeks and *Scott* requires.

Let Board take a step back to look at its May Rationale objectively. Plainly Board has not said the facts of Johnson's initial offense were so heinous as to bar him from parole forever [7]—else why did the May Ra-

---

**6.** This quotation expands on the portion quoted in *Scott,* because of the direct reference to due process. *Accord, Welsh,* 668 F.2d at 333. Compare our Court of Appeals' recent discussion in *Redding v. Fairman,* 717 F.2d 1105 at 1114–1116 (7th Cir.1983) of the due process need for a statement of reasons supporting prison discipline (applying the teaching of *Wolff v. McDonnell,* 418 U.S. 539, 565, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974)).

**7.** This Court expresses no opinion as to whether such a statement would pass muster in constitutional terms. Parole decisions represent a predictive judgment that is difficult at best (all predictions of human behavior are chancy under the most favorable circumstances, and conduct in the severely controlled prison environ-

tionale refer to (1) the absence of disciplinary reports since the time of the November Rationale, (2) Johnson's recent assignment to the Officers' Kitchen, (3) the need "to insure Mr. Johnson's continuing institutional stability and to therefore enhance the likelihood of his conforming to parole conditions and non-violent behavior in the free community" and (4) a continuance of the case to May 1984? It *looks* as though Board is doing its job of trying to make the necessary *current* judgment about probable *future* conduct—the essence of the parole decision—yet the problem in due process terms remains that Board's reasons for parole denial are not articulated.

For aught that appears the May Rationale relies only on the seriousness of Johnson's pre-1973 offenses as the predicate for a present denial of parole.[8] At least there is no indication as to *why* the needs quoted in item (3) in the preceding paragraph led to Board's decision, and that "why" explanation is what *Scott, Greenholtz* and kindred cases mandate. Accordingly the May Rationale does not meet the demands of the Due Process Clause.

### Conclusion

Technically the May hearing mooted Johnson's Petition and the cross summary judgment motions as originally filed (related as they were to the November Rationale). As for the May Rationale, put into issue by agreement of the parties, there is no genuine issue of fact material to the question whether it satisfied the due process requirements under *Scott.* It did not. Johnson is therefore entitled to a judgment as a matter of law, and respondents' cross motion for summary judgment is denied. Board is directed within 63 days from the date of this order to (1) reconsider Johnson for parole and (2) should it again deny him parole, provide him with a constitutionally

ment is of course not a wholly reliable indicator of conduct in society). Whether any "forever" decision might (or even should) infringe a prisoner's due process rights is a question for another day in another case.

adequate statement of the facts and reasons supporting its decision.

8. After all, except for the statement of its conclusion denying parole, the only facts stated by Board in the May Rationale (other than the facts of the offenses themselves) were favorable rather than unfavorable to Johnson.